GUCCI AMERICA, INC., Plaintiff,

v.

GOLD CENTER JEWELRY,
et al., Defendants.

GUESS?, INC., Plaintiff,

v.

GOLD CENTER JEWELRY,
et al., Defendants.

Nos. 97 Civ. 1354(LAK),
97 Civ. 1374(LAK).

United States District Court,
S.D. New York.

Jan. 29, 1998.

Milton Springut, Robert Tilewick, David M. O'Neill, Kalow Springut & Bressler, New York City, for Gucci America, Inc. and Guess?, Inc.

Noel W. Hauser, New York City, for Gold Center Jewelry, Associates, Inc., 6 East Fordham Road Associates, Inc., A&D Jewelry, Inc., Senobar Jewelry, Inc. and Gold Mine 2000, Inc.

Louis Tratner,Tratner & Molloy, New York City, for Empire Jewelry.

Bruce H. Lederman, Lederman Abrahams Lederman & Zarett, LLP, Massapequa, NY, for JAF, Inc.

## MEMORANDUM OPINION

KAPLAN, District Judge.

These matters are before the Court on motions to vacate default judgments entered against many of the defendants on claims of violation of the Trademark Act of 1946 as amended by the Anticounterfeiting Consumer Protection Act of 1996 (the "1996 Act"). Briefly stated, the plaintiffs are manufacturers of trademarked goods marketed under the Gucci and Guess? brands. The defendants all appear to be retail jewelry stores doing business in the Bronx. Each is alleged to have sold counterfeit Gucci and Guess? merchandise even after agreeing to cease and desist from doing so. In view of the

plethora of post-judgment applications, some of them repetitive, and two notices of appeal filed by counsel for a number of the defendants, it is essential to begin with a detailed summary of the course of proceedings in these cases.

I

Both actions were commenced in late February 1997. The complaints make similar allegations of trademark infringement and counterfeiting. Both sought damages and injunctive relief. The *Gucci* complaint named as defendants Gold Center Jewelry ("Gold Center"), Home Boy 2000 ("Home Boy"), Big Time Jewelry ("Big Time"), Gold Fortune Jewelry ("Gold Fortune") and John Does 1–8. The *Guess* complaint also named Gold Center, Home Boy, Big Time and twenty John Doe defendants. In addition, it named Empire Jewelry ("Empire"), Gold "N" Ice ("Gold"), Gold Spot Jewelry ("Gold Spot"), Golden Touch Bronx Corp. ("Golden Touch"), Manny's Joyeria Jewelry ("Manny's"), Oro–Uno Jewelry, Inc. ("Oro–Uno") and Senobar Jewelry ("Senobar"). Affidavits purportedly reflecting service on each of the defendants except Gold Fortune and the Does were filed in April 1997.[1]

### The Default Judgments

With the exception of Gold Spot, which moved unsuccessfully to dismiss the *Guess* complaint pursuant to Rules 12(b)(4) and (5), none of the defendants appeared in either action.[2] In consequence, on May 6, 1997, the Court granted plaintiffs' applications for default judgments in both cases as to each of the defaulting defendants—Gold Center, Home Boy and Big Time in both cases and Empire, Gold, Golden Touch, Manny's, Oro–Uno and Senobar in the *Guess* case. The judgments granted principally injunctive relief and retained jurisdiction to award damages, including statutory damages, as well as attorneys' fees and costs. In June 1997, the Court granted plaintiffs' applications for leave to conduct discovery against the defaulting defendants in order to enable plain-

---

1. The actions were dismissed as to the Doe defendants and Gold Fortune for failure to make timely service by orders dated October 9, 1997.

2. The action against Gold Spot was resolved by the entry of a consent judgment dated January 15, 1998.

tiffs to present their damages cases, and several of the defaulting defendants were deposed.

*The Damage Awards*

On September 17, 1997, the plaintiffs filed papers in support of applications for the entry of judgments for damages pursuant to Rule 55(b)(2). The applications specifically sought awards of statutory damages pursuant to the 1996 Act in the amount of $25,000 against each defaulting defendant in each case. Although the applications were served on each defaulting defendant, none appeared or filed any papers in response. By orders entered October 16, 1997, the Court granted the applications and directed the Clerk to modify the judgments previously entered to award $25,000 plus costs and attorneys' fees against each defaulting defendant in each case. The Court found that the defendants had engaged in deliberate and wilful counterfeiting, even after receiving cease and desist letters. The amount of damages, the Court concluded, was necessary to deter defendants from future infringing activities. Amended judgments were filed on October 20, 1997.

*The Applications to Vacate the Judgments*

The first of the applications to vacate the default judgments was filed in the *Guess* case on behalf of Empire by the law firm of Tratner & Molloy on October 31, 1997. It argued that its default was excusable because it was the product of its principal's limited abilities in the English language. The Court, however, denied the motion because the record showed that Empire had retained Tratner & Molloy in June 1997, the firm represented it at a deposition conducted on June 30, and Empire offered no excuse for the lengthy delay in seeking relief from the judgment.[3]

*Gold Center, Golden Touch, and Oro–Uno*

The issuance of writs of execution prompted additional applications. On December 3, 1997, Gold Center, Golden Touch and Oro–

Uno—all represented by Mr. Hauser—moved by orders to show cause to set aside the judgments against them, Gold Center in both cases and Golden Touch and Oro–Uno in the *Guess* case.

Gold Center argued in substance that it had assumed that plaintiffs would seek no relief against it by virtue of the Court's comment at a pretrial conference, attended by Gold Center's principal (in June 1997), that the matter probably would resolve itself if he cooperated with plaintiffs. He nonetheless admitted service of process, did not contest receipt after the conference of the application to award damages against him, and offered no other excuse for its default. The Court denied Gold Center's motion for failure to establish excusable neglect.[4]

Golden Touch denied having been served while Oro–Uno contended that it had been misled by plaintiffs' counsel. Following an evidentiary hearing on these two motions, the Court found that Golden Touch had not been served and that Oro–Uno had not been misled by plaintiffs' counsel. It vacated the judgment against Golden Touch and denied Oro–Uno's motion.[5]

*Home Boy*

On December 30, 1997, Home Boy, represented by the Lederman firm, moved in both cases by order to show cause to vacate the judgments against it. During argument on January 16, 1998, counsel for Home Boy indicated that it seeks to vacate only the award of money damages and an opportunity to litigate the amount that should be awarded.[6]

*Gold and Senobar*

On December 31, 1997, Mr. Hauser presented another order to show cause in the *Guess* case, this one seeking a temporary restraining order and vacatur of the judgments against Gold and Senobar. While the Court declined to issue the restraining or-

---

3. Order, Nov. 17, 1997 (*Guess* case).

4. Order, Dec. 17, 1997. It should be noted also that Gold Center's motion made no showing that it had a meritorious defense. The Court denied Gold Center's motion for reconsideration by order dated December 23, 1997.

5. Order, Dec. 29, 1997, *Guess* case; Tr., Dec. 29, 1997, *Guess* case, at 79–80 (Golden Touch), 83–88 (Oro–Uno [A & D Jewelry]).

6. Tr., Jan. 16, 1998, at 5.

der,[7] it made the motion to vacate returnable on January 9, 1998.

### Big Time and Manny's

On January 9, 1998, Mr. Hauser appeared with still another order to show cause, this one captioned in both cases. The order itself sought a stay of all enforcement efforts and to bring on a motion to vacate the defaults as to Big Time (both cases) and Manny's (*Guess* case). The moving affidavit, however, sought to vacate the judgments against not only Big Time and Manny's, but also against Gold Center, Gold, Golden Touch, Oro–Uno (a/k/a A & D) and Senobar although the judgment against Golden Touch already had been vacated.[8] It argued, for the first time, that the monetary relief granted against the defendants exceeded in kind and amount that prayed in the complaint and therefore was impermissible under Rule 54(c). While the Court declined to issue the requested stay, it made the motion returnable on January 15, 1998.

### The Appeals and Other Proceedings

Confusing matters still further, Mr. Hauser filed notices of appeal on January 9, 1998 in both cases. Each purports to appeal on behalf of "defendants"—although Mr. Hauser does not represent all of the defendants—from the judgments against the defendants and the orders refusing to vacate the default judgments. The appeals in the *Gucci* case, however, were dismissed on January 22, 1998 and the mandate filed in this Court on the following day.

On January 15, 1998, Guess?, Inc. stipulated with Gold, Manny's and Senobar to vacate the monetary provisions entered against them in the *Guess* case. Similarly, Gucci America, Inc. agreed to vacate the monetary provisions of the judgments entered against Home Boy in the *Gucci* case.

Finally, the Court held an evidentiary hearing on January 16, 1998 with respect to the Home Boy motions in both cases.

In summary then, the matters stand as follows:

1. The pending motions are as follows: (a) by Home Boy in the *Guess* case to vacate the damage award against it, (b) by Gold, Manny's and Senobar to vacate the remaining nonmonetary portions of the judgments against them in the *Guess* case, and (c) if the Court regards the applications as properly before it, by Big Time, Gold Center and Oro–Uno to vacate the judgments against them, Big Time and Gold Center in both cases and Oro–Uno in *Guess*.

2. Absent relief from one or more of the default judgments, the *Gucci* case has been resolved as to all defendants.

3. The *Guess* case remains pending as to Golden Touch irrespective of the outcome of these motions, as the default judgment against it was vacated.

4. A notice of appeal of uncertain effect remains pending in the *Guess* case on behalf of unspecified defendants.

## II

The starting point is to determine the effect of the pending notice of appeal on this Court's jurisdiction to decide the matters now before it in the *Guess* case.

▮ In general, "the filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."[9] Rigid enforcement of such a mechanical rule, however, would ill serve the rule's objective of promoting efficiency by preventing two courts from addressing the same matter at the same time.[10] Moreover, it would deliver into the hands of each litigant the ability to freeze matters in the district court simply by filing a notice of appeal, no matter how frivolous.[11] In conse-

---

7. Tr., Dec. 31, 1997, *Guess* case, at 2–4.

8. The judgment against Golden Touch was vacated on December 29, 1997.

9. *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225

(1982); *United States v. Rodgers,* 101 F.3d 247, 251 (2d Cir.1996).

10. *See, e.g., Rodgers,* 101 F.3d at 251.

11. *See Leonhard v. United States,* 633 F.2d 599, 609–11 (2d Cir.1980), *cert. denied,* 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981).

quence, district courts are not deprived of jurisdiction by the filing of untimely or manifestly defective appeals and appeals from non-appealable orders.[12]

The notice of appeal did not transfer jurisdiction over the amended default judgment in the *Guess* case to the Court of Appeals. The amended default judgment was entered on October 20, 1997. The notice of appeal was not filed until January 9, 1998, considerably more than thirty days thereafter. In consequence, insofar as the notice of appeal seeks review of the amended default judgment, it is untimely.

The notice seeks review also of unspecified subsequent orders declining to vacate the default judgments. But there are two additional problems.

First, the only defendants as to which the Court had denied motions to vacate on or before the date of the notice of appeal were Empire, Gold Center and Oro–Uno (a/k/a A & D Jewelry). The order denying the motion to vacate made on behalf of Empire was entered on November 17, 1997. The January 9, 1998 notice of appeal, even assuming that Mr. Hauser was authorized and intended to file it on Empire's behalf, was untimely insofar as Empire is concerned.

Second, Mr. Hauser does not represent Empire and lacked authority to file the notice on its behalf, assuming *arguendo* that it was his intention to do so.

Accordingly, the only orders denying motions to vacate that are the subjects of a timely, authorized and pending notice of appeal are the December 17 and December 29 orders denying the motions of Gold Center and Oro–Uno in the *Guess* case.[13] In consequence, the sole effect of the notices of appeal filed on January 9, 1998 is to preclude this Court from entertaining—insofar as it relates to Gold Center and Oro–Uno—Mr. Hauser's request, contained in the affidavit in support of his January 9, 1998 motion, that the default judgment in the *Guess* case be vacated on the ground that the relief granted exceeds that sought in the complaint and therefore ran afoul of Rule 54(c).[14]

### III

Having thus cleared the underbrush, the Court turns first to that aspect of Mr. Hauser's January 9, 1998 application which seeks to vacate the judgments against Big Time in both cases and against Gold Center in the *Gucci* case on the ground that the relief granted exceeds that demanded in the complaint and therefore violates Rule 54(c).[15]

The complaints in these cases each alleged that the plaintiff had no adequate remedy at law and had been damaged in an undetermined amount believed to be in excess of $25.000. The prayers for relief sought, among other things, injunctive relief and "[t]hat defendants be required to account to

---

**12.** *E.g., Griggs,* 459 U.S. at 58 (non-appealable order); *SEC v. American Bd. of Trade,* 829 F.2d 341, 344 (2d Cir.1987), *cert. denied sub nom. Economou v. SEC,* 486 U.S. 1034, 108 S.Ct. 2018, 100 L.Ed.2d 605 (1988)(same); *Leonhard,* 633 F.2d at 610 (same); *In re Grand Jury Proceedings,* 795 F.2d 226, 231 (1st Cir.1986) (defective or untimely notice of appeal); *United States v. Hitchmon,* 587 F.2d 1357, 1360 (5th Cir.1979) (same); 20 James Wm. Moore, Moore's Federal Practice § 303.32[2][b][iv] (3d ed.1997) (hereinafter Moore's Federal Practice).

**13.** As a general matter, an order denying a motion to vacate a default judgment is final and therefore appealable. *E.g., Welden v. Grace Line, Inc.,* 404 F.2d 76, 77 (2d Cir.1968); *Weilbacher v. J.H. Winchester,* 197 F.2d 303, 305 (2d Cir. 1952).

**14.** *E.g., New York v. NRC,* 550 F.2d 745, 758–59 (2d Cir.1977) (district court may not reexamine or supplement the order or judgment from which an appeal is pending).

**15.** The motion is made on behalf of Big Time (both cases), Gold Center (both cases), Gold

(*Guess* case), Golden Touch (*Guess* case), Oro–Uno (*Guess* case), Manny's (*Guess* case) and Senobar (*Guess* case). As indicated above, insofar as the motion is made on behalf of Gold Center and Oro–Uno with respect to the *Guess* case, this Court is deprived of jurisdiction by the pendency of the appeal from the December 17 and 29 orders denying their motions to vacate. The entire judgment against Golden Touch was vacated prior to the filing of this motion. The monetary portions of the judgment in the *Guess* case against Gold. Manny's and Senobar were vacated by stipulation dated January 15, 1998. In consequence, the argument made in this aspect of the motion applies only to the judgments against Big Time and Gold Center (in both cases) and Oro–Uno (in *Guess* ). As the Court lacks jurisdiction over the attacks on the judgments against Gold Center and Oro–Uno ill the *Guess* case by virtue of the pendency of their appeal, the only matters open for consideration here are the judgments against Big Time in both cases and the judgment against Gold Center in *Gucci.*

plaintiff Guess for all profits and damages resulting from defendants' respective infringing activities and that the award to plaintiff ... be increased as provided for under 15 U.S.C. 1117." The moving defendants argue that the complaints thus did not seek statutory damages and, in any case, that the awards of $25,000 in statutory damages against each defendant exceeded the amount prayed for in the demand for judgment. In consequence, they contend, the judgments violated Rule 54(c) and must be set aside.

Rule 54(c) of the Federal Rules of Civil Procedure states:

> "A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment. Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings."

The rationale for the rule, insofar as it applies to default judgments, "is that default is tantamount to consent to the entry of judgment, but this consent is effective only to the extent that it was duly informed." [16]

In these cases, the only monetary relief sought in the complaints, even read generously in favor of the plaintiffs, was an accounting for defendants' profits and damages sustained by plaintiffs, "increased as provided for under 15 U.S.C. § 1117." The latter phrase obviously refers to Sections 1117(a) and (b), which permit courts to increase monetary awards to as much as treble the amount of plaintiff's actual damages or defendant's actual profits as established by the plaintiff. Nevertheless, the plaintiffs here elected, following the entry of default judgments as to liability and injunctive relief, to seek awards of statutory damages pursuant to Section 1117(c), which permits a prevailing plaintiff so electing to recover up to $1 million for willful use of each counterfeit mark per type of goods or services sold as an alternative to actual damages or an accounting of the defendant's profits.

Statutory damages under Section 1117(c) are different in kind from actual damages or an accounting of the defendant's profits, most fundamentally because there is no necessary mathematical relationship between the size of such an award and the extent or profitability of the defendant's wrongful activities. Surely it cannot be said that even a defendant who deliberately elects to default in a suit seeking only actual damages or an accounting of profits, secure in the knowledge that no substantial award can be entered because the defendant's infringing sales were minimal, knowingly consents to the entry of an award of up to $1 million. In consequence, if these defendants simply had been served with the summonses and complaints and with nothing further prior to the award of statutory damages against them, the statutory damages awards could not stand in light of Rule 54(c).[17] These defendants, however, were not thus surprised. Each admittedly was served with plaintiffs' joint memorandum in support of entry of judgments for damages, which clearly elected to pursue statutory damages, rather than actual damages or an accounting of profits by the defaulting defendants. Indeed, page 1 of plaintiffs' memorandum explained that Section 7 of the 1996 Act [18] permitted imposition of damages of up to $1 million and "request[ed] that a judgment be entered against each of the defaulting defendants of $25,000 per infringing mark." Thus, anyone who gave a cursory reading even to the first page had to have known that judgments of $25,000 were sought by each plaintiff against each defaulting defendant. Yet none of the defaulting defendants responded to that application.

While Rule 54(c) must be enforced strictly in order to prevent the consent to the entry of judgment that is implicit in a default from being expanded beyond the defaulting party's intentions, there is no reason to permit it to be used as a shield when a default-

---

**16.** 10 Moore's Federal Practice § 54.71, at 54–127.

**17.** *See, e.g., Compton v. Alton S.S. Co.,* 608 F.2d 96, 105–06 (4th Cir.1979) (no statutory penalty available on default where pleadings did not request such relief). *Marina B. Creation S.A. v. de Maurier,* 685 F.Supp. 910, 912–13 (S.D.N.Y. 1988) (no trebling of patent damages on default where neither pleadings nor motion for default judgment mentioned such relief).

**18.** 15 U.S.C. § 1117(c).

ing party has full knowledge of the relief sought against it but nevertheless ignores the proceedings. As long as the defaulting party receives adequate notice of the relief sought and is afforded a meaningful opportunity to oppose it, the purpose of Rule 54(c) is served and any variance between the relief granted and that contained in the prayer for relief in the complaint is immaterial.[19] In *Trans World Airlines, Inc. v. Hughes*,[20] the notorious case in which a $145 million default judgment was awarded against TWA based on the failure of Howard Hughes to appear for a deposition, for example, the Second Circuit affirmed against Rule 54(c) attack the district court's decision to permit amendment of the prayer for relief to increase the damages sought after the default occurred.[21] Although it did not discuss the point in detail, the decision clearly rested on the fact that TWA had a full opportunity to contest the amount of the damages following the amendment. Similarly, in *Appleton Electric Co. v. Graves Truck Line, Inc.*,[22] the Seventh Circuit upheld default judgments that awarded relief that was not spelled out with precision in the complaints because the defendant had been served with a proposed default order which contained a formula that permitted the defendant to determine the amount of the judgments that would be entered against it.[23]

Big Time here admits that it was served with the summons and complaint and "with papers which I am now informed constituted the application of the plaintiffs for a default judgment."[24] It claims to have defaulted "upon the understanding that the plaintiffs were seeking an Injunction against our sale of merchandise which were counterfeit or spurious,"[25] relief to which it did not object. Thus, it acknowledges that its default with respect to the complaint was knowing and deliberate.[26] Nor does it not deny having been served with plaintiffs' joint application for the imposition of statutory damages of $25,000 per trademark. But it contends that it never understood that the plaintiffs were seeking monetary damages.[27]

The situation of Gold Center is similar. Its principal admitted receipt of process and with "being familiar with the claims asserted."[28] Although the complaints clearly sought damages, albeit not statutory damages, he contended that, during the period from the commencement of the action through the June 1997 depositions conducted by plaintiffs, he "was under the impression that the plaintiffs were not seeking monetary relief."[29] He admitted also that he was served "with a voluminous set of legal documents" in September or October—the only documents meeting that description in the relevant time period being plaintiffs' joint application for awards of statutory damages—but claimed that he did not understand them.[30] Although he was sufficiently curious to telephone plaintiffs' counsel, he did not reach them and, as far as the record discloses, never sought legal advice of his own.[31]

---

**19.** 10 MOORE'S FEDERAL PRACTICE § 54.71[1], at 54–127–28.

**20.** 449 F.2d 51 (2d Cir.1971).

**21.** *Id.* at 56–57.

**22.** 635 F.2d 603 (7th Cir.1980).

**23.** *Id.* at 610–11. *See also In re Dierschke*, 975 F.2d 181, 185 (5th Cir.1992) (failure of complaint to request relief granted on default immaterial where defendant contested amount of award at inquest).

**24.** Zarrin Aff. ¶¶ 3, 5.

**25.** *Id.* ¶ 7.

**26.** This admission, coupled with (a) the eight month delay between the entry of the default judgments as to liability and injunctive relief and the application to vacate the judgments and (b) the unfairness and needless expense that would be imposed on the plaintiffs at this late date if the issue of liability were reopened, is more than sufficient basis for declining to vacate those aspects of the default judgments regardless of whether this defendant has demonstrated the existence of a meritorious defense.

**27.** Zarrin Aff. ¶¶ 7–8.

**28.** Shvut Aff., Nov. 19, 1997, ¶ 4.

**29.** *Id.* ¶ 12.

**30.** *Id.* ¶ 13.

**31.** *Id.*

In these circumstances, the Court holds that the monetary relief granted by the amended judgments is valid notwithstanding that it differs in kind from that referred to in the prayers for judgment in the complaints. The plaintiffs served each of the defaulting defendants with papers which very clearly explained that they were seeking statutory damages in the amount of $25,000 per trademark from each defendant. The defaulting defendants therefore were afforded notice and an opportunity to be heard with respect to the relief to be granted against them. In view of *Trans World Airlines* and *Appleton,* there is no Rule 54(c) infirmity in the judgments.

■ That is not the end of the matter, however. Although the issue has not been raised by counsel, the defaulting defendants' contentions that they did not understand the application for statutory damages that was served upon them raises the question whether relief should be granted from the monetary awards on the ground that their failure to respond was the product of mistake, inadvertence or excusable neglect.[32] This requires consideration of "(1) whether the default was willful; (2) whether defendant has a meritorious defense; and (3) the level of prejudice that may occur to the non-defaulting party if relief is granted."[33] Relevant too is the length of any delay between the default and the application for relief and the reasons for it.[34]

The Court assumes *arguendo* that each of these defendants has a meritorious defense with respect to the amount of statutory damages as that phrase has been defined by the Second Circuit. Each has made assertions in its affidavit that would "give the factfinder some determination to make."[35] While the plaintiffs would suffer some prejudice if the amount of statutory damages were reopened, the extent of that prejudice would be limited—and certainly far more limited than if the issue of liability were reopened. In consequence, the Court's judgment as to whether to vacate the monetary awards will depend significantly on its assessment of the credibility of the principals of Big Time and Gold Center. Accordingly, the Court will conduct an evidentiary hearing limited to the issue whether these defendants' failure to respond to the joint application for the imposition of statutory damages was wilful.[36]

## IV

Home Boy seeks only to vacate the awards of monetary relief.[37] In view of the stipulation by Gucci America to vacate the monetary relief procured on its behalf, the motion remains viable only to the extent it relates to the monetary award in favor of Guess?, Inc.

As indicated above, the factors relevant to the question whether to vacate the monetary portion of the default judgment against Home Boy: "(1) whether the default was willful; (2) whether defendant has a meritorious defense; and (3) the level of prejudice that may occur to the non-defaulting party if relief is granted."[38] In this case, Home Boy has a meritorious defense in the requisite sense—it is in a position to advance facts that were not previously before the Court that could be material to the determination of the appropriate amount of statutory dam-

32. FED.R.CIV.P. 60(b)(1).

33. *American Alliance Ins. Co. v. Eagle Ins. Co.,* 92 F.3d 57, 59 (2d Cir.1996) (quoting *Davis v. Musler,* 713 F.2d 907, 915 (2d Cir.1983)) (internal quotation marks omitted).

34. *Beller & Keller v. Tyler,* 120 F.3d 21, 23 (2d Cir.1997); *Kotlicky v. United States Fidelity & Guar. Co.,* 817 F.2d 6, 9 (2d Cir.1987).

35. *American Alliance Ins. Co.,* 92 F.3d at 61.

36. Precisely the same analysis would warrant further consideration of the question whether to vacate the monetary awards against Gold Center and Oro–Uno hi the *Guess* case had the pending appeal not ousted this Court of jurisdiction. These defendants may wish to move the Court of Appeals to remand to this Court to permit it to do so. *See Winter v. Cerro Gordo Co. Conservation Board,* 925 F.2d 1069, 1073 (8th Cir.1991); *Commonwealth of Puerto Rico v. S.S. Zoe Colocotroni,* 601 F.2d 39 (1st Cir.1979).

37. Tr., Jan. 16, 1998, at 5.

38. *American Alliance Ins. Co.,* 92 F.3d at 59 (quoting *Davis v. Musler,* 713 F.2d 907, 915 (2nd Cir.1983)) (internal quotation marks omitted).

ages.[39]  Plaintiff is situated no differently with respect to prejudice were the amount of statutory damages against this defendant reopened than in the case of the defendants discussed above—there would be some prejudice, but not so much to preclude reopening in an otherwise appropriate case.  Wilfulness, however, is a harder issue.

Home Boy actually is a name under which JAF, Inc.—a corporation wholly owned by Keyvan Amirianfar, who emigrated from Iran some years ago—conducts a small retail jewelry business at the corner of Fordham Road and Webster Avenue in the Bronx.[40]  In order to place the motion to vacate in proper context, it is necessary to recapitulate the history of the lawsuit to the extent it relates to this defendant.

Home Boy was served with the summons and complaint, which were left in its store in Amirianfar's presence, on March 7, 1997.[41]  The default judgment was entered on May 6, 1997.  Home Boy was served with a notice of deposition, which was served pursuant to a court order the object of which was to afford plaintiff discovery on the issues of damages in preparation for the inquest, in June 1997.[42]  On June 25, 1998, Amirianfar appeared pursuant to the notice at the offices of plaintiff's counsel—thus demonstrating that he read the notice of deposition—but refused either to identify himself or be sworn.[43]  When Amirianfar sought to turn the tables and question plaintiff's counsel, the following colloquy occurred:

"Q  [Mr. O'Neill] I am asking the questions.

"A  [Mr. Amirianfar] Don't push me.  I am not going to lose, you are going to lose.  I am not going to lose a penny.

"Q  Similarly, if I don't understand your answers or your answers are incomplete I will ask you to explain them.  The deposition of defendant Home Boy 2000 is being taken in Gucci Inc. versus Gold Center, et al., Civil Action 97 Civ. 1354.

"A  David, I am leaving, I don't make a deal with you.  Let the marshal come to my store.

"Q  Let the record reflect that the deponent is refusing to testify in the category specified in the orders issued in Guess?, Inc. versus Gold Center Jewelry, 97 Civ. 1374 19.  Date order for discovery dated June 9, 1997, signed by Louis [*sic*] A. Kaplan.  And let the record also reflect that the deponent is refusing to testify in Gucci Inc. versus Gold Center Jewelry, 97 Civ. 1354 order for discovery signed by Louis [*sic*] A. Kaplan." [44]

The discussion continued in a similar vein for a few minutes, whereupon Amirianfar announced that he was "not going to pay a penny to the attorney" and, after being told that "there is an order entered in the case and [that] you are refusing to testify," told plaintiff's counsel to "shut up" and "[h]ave a nice day" and left.[45]

Amirianfar concededly was served in September 1997 with plaintiffs' application for the entry of $25,000 damage awards in favor of each of the plaintiffs against Home Boy.  Nevertheless, he neither appeared nor answered in response to the motions.

In the declaration submitted in support of the motion to vacate the judgments, Amirianfar asserted that he never dealt in Guess or Gucci trademarked goods except in a few instances in which he had taken such merchandise in trade.  He argued that the default had been excusable because he had assumed that the case was against only companies that were dealing in Gucci and Guess merchandise and that it did not pertain to

---

**39.**  *Id.* at 61.

**40.**  Amirianfar Decl. ¶ 1.

**41.**  This is undisputed.  Tr., Jan. 16, 1998, at 32.

**42.**  Amirianfar produced the notice of deposition at the hearing.  DX D; Tr., Jan. 16, 1998, at 21–22.

**43.**  PX 7, at 3.

**44.**  PX 7, at 3–4.

**45.**  *Id.* at 7.

him.[46] To buttress this contention, he swore that he "never before had any experience with the legal system, and never been in any sort of trouble."[47] Indeed, in reference to the remarkable behavior relating to the deposition, he "absolutely den[ied] ever having gone to plaintiffs office and spoken with them about this case."[48]

At the evidentiary hearing on January 16, 1998, a somewhat different story emerged. Amirianfar first contended that legal papers had been delivered to him in his store, but that he saw the name "Gold Center" on them and put them aside without reading them because he "thought maybe it is nothing."[49] He acknowledged that he had received the notice of deposition and admitted that it had been he who had appeared at the offices of plaintiff's counsel on the occasion referred to above, an event he claimed to have forgotten at the time his declaration had been prepared. When he then was pressed about whether he had read the summons and complaint, he admitted that he had read enough to know that the document had come from the United States District Court, but claimed that he nevertheless decided not to read the balance.[50] Moreover, he subsequently acknowledged that he had learned from other local jewelry store owners even before he had gone to counsel's office in June 1997 that there were lawsuits about claims that the stores were selling counterfeit goods, although he claimed that one of the other store owners told him that "it's nothing."[51] Although he admitted receiving the plaintiffs' application to fix the monetary award against Home Boy, Amirianfar claimed that he did not understand that it sought money from him.[52]

The hearing established also that Amirianfar was not as naive as his declaration claimed. He admitted that he had been arrested in 1994 for selling stolen merchandise and that he had retained a lawyer on that occasion.[53] He had retained counsel also for the purpose of forming JAF, Inc.,[54] and uses an accountant to prepare tax returns.[55]

■ It now is clear in this circuit that wilfulness for purposes of determining whether to vacate a default judgment refers to "deliberate default or bad faith on the part of the defaulting party."[56] The question whether Amirianfar's actions were wilful in this sense basically requires a judgment involving the Court's assessment of his credibility and the logic of the situation in which he found himself.

■ Amirianfar received the summons and complaint. He read the summons. Even if he did not read the complaint, he knew from the summons and his conversations with other store owners that Home Boy had been sued. He knew from his previous experience that he needed a lawyer, a fact confirmed by his protestation at the June 1997 deposition that he "was not going to pay a penny to the attorney." He knew, in short, that he was in peril of a default judgment if Home Boy did not take timely and appropriate action but nevertheless failed to act. Once the default judgment was entered, he appeared for the noticed deposition, thus demonstrating that his claims that he never read the legal papers are untrue at least in part. If his behavior on that occasion cannot be described as wilful and in bad faith, those terms have no meaning. Thus, the Court finds that Amirianfar deliberately and wilfully defaulted in this action and, moreover, deliberately obstructed its progress by his actions at the deposition. Although he has not sought to reopen the default as to liability and injunctive relief, this finding would have led the Court to deny any such application. But it is

**46.** Amirianfar Decl. ¶¶ 4–5.

**47.** *Id.* ¶ 8.

**48.** *Id.* 9.

**49.** Tr., Jan. 16, 1998, at 18.

**50.** *Id.* at 24–25.

**51.** *Id.* at 31–33, 57.

**52.** *Id.* at 34–36.

**53.** *Id.* at 36–37, 53.

**54.** *Id.* at 53.

**55.** *Id.* at 53–54.

**56.** *American Alliance Ins. Co.,* 92 F.3d at 59.

important to focus on the fact that he seeks only to open the question of the amount of statutory damages.

■ Amirianfar concededly was served with the application for the entry of $25,000 judgments against Home Boy and ignored it. As a legal matter, he was on notice of the relief sought against him. Having considered his demeanor and all of the evidence in the case, however, the Court is not persuaded that his failure to respond to that application was the product of bad faith. And while it was deliberate in the sense that Amirianfar made a conscious decision to pay no attention to it and not to seek legal advice, the Court is satisfied that this was more a product of stupidity than of malice. Accordingly, the monetary relief awarded against Home Boy in the *Guess* case is vacated and the issue of the amount of statutory damages to be awarded against Home Boy is reopened.

## V

Finally, the Court turns to consideration of the stipulations. As noted above, Gold, Manny's and Senobar each stipulated with Guess to vacate the monetary portion of the judgments against them. Still pending before this Court then is the motion of these defendants to vacate the non-monetary portion of the judgments against them in the *Guess* case. The only ground raised in support of the motion to vacate the defaults as to Gold, Manny's and Senobar is that the relief granted exceeds that demanded in the complaint and therefore violates Rule 54(c). This argument, however, goes only to the monetary portion of the judgments and therefore was mooted by the stipulation entered into between Guess and Gold, Manny's and Senobar. As there were no grounds articulated in the motion for vacating the non-monetary portions of the judgments against these defendants, any relief from the non-monetary portion of the judgments would be inappropriate.

### Conclusion

For the foregoing reasons,

1. The Court will hold an evidentiary hearing on February 13, 1998 at 9:30 a.m. on the motions of (1) Big Time Jewelry to vacate so much of the amended judgments in both of these cases as awarded statutory damages against it, and (2) Gold Center Jewelry to vacate so much of the amended judgment in No. 97 Civ. 1354 as awarded statutory damages against it. In the event that the Court of Appeals remands No. 97 Civ. 1374 to this Court prior to that date, the hearing will also cover the motions of Gold Center Jewelry and Oro–Uno Jewelry to vacate so much of the amended judgment in that case as awarded statutory damages against them.

2. All further proceedings to enforce the monetary provisions of the judgments against Big Time Jewelry in both of these cases and against Gold Center Jewelry in No. 97 Civ. 1354 are stayed pending further order of the Court.

3. The motion of defendant Home Boy 2000 to vacate so much of the amended judgment in No. 97 Civ. 1374 as awarded statutory damages against it is granted. Said defendant shall file any papers in opposition to the plaintiff's motion for the imposition of damages in that case no later than February 13, 1998.

4. The motions of defendants Gold "N" Ice, Senobar Jewelry and Manny's Joyeria Jewelry, to the extent not resolved by the stipulation dated January 15, 1998, are denied.

SO ORDERED.