06-0629-cv
Silge v. Merz

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

———————————

August Term, 2007

Argued: September 26, 2007                    Decided: December 6, 2007)

Docket No. 06-0629-cv

———————————

CHRISTIAN B. SILGE.,

*Plaintiff-Appellant*,

—v.—

ANNA B. MERZ, KEVIN J. MERZ, and ENTERPRISE TECHNOLOGY CORP.,

*Defendants-Appellees.*<sup>*</sup>

———————————

B e f o r e:

LEVAL, SOTOMAYOR, and KATZMANN, *Circuit Judges*

———————————

Appeal from a judgment of the United States District Court for the Southern District of New York (Daniels, *J.*) granting plaintiff's motion for a default judgment. Affirmed.

———————————

ROBERT J.A. ZITO, Carter Ledyard & Milburn, LLP, New York, NY, *for Plaintiff-Appellant*

———————————

KATZMANN, Circuit Judge:

————————————————

<sup>*</sup> Defendants-Appellees have not filed a brief or otherwise appeared in this case.

This case calls upon us to decide whether the appellant, after securing a default judgment, should have been permitted to recover on a claim for prejudgment interest that was not pleaded in the complaint or reflected in its demand clause. Notwithstanding that the appellant notified the defaulted defendants of this additional claim before damages were calculated, we hold that the district court correctly applied Rule 54(c) of the Federal Rules of Civil Procedure in not allowing such recovery to the extent it would result in an award exceeding the amount prayed for in the demand clause. The judgment of the district court is therefore affirmed.

## I.

Plaintiff-appellant Christian B. Silge ("Silge") contends that beginning on January 30, 1992, "and from time to time thereafter," he lent money to defendants Anna[1] and Kevin Merz, his sister and her husband, to benefit an entity called Enterprise Technology Corp., which is also a defendant in this action. Compl. ¶ 7. To make these loans, Silge borrowed against assets at an interest rate ranging from 3.25% to 10%. Compl. ¶ 8. Silge alleges that the defendants had initially agreed to reimburse him for the interest that accrued on such borrowing as well as the principal of the loan, but that they stopped making regular payments in August 1997 and made no payments whatsoever after January 2002. Compl. ¶ ¶ 8-9.

On April 8, 2005, Silge filed this diversity action in the Southern District of New York, where it was assigned to the Hon. George B. Daniels. The complaint alleged that the defendants had repaid only "portions of the Loan, the outstanding balance of which is $1,153,545, as of

---

[1] We note that while Anna Merz is the name used in the official caption, the complaint and the record below refer to Anne Merz.

2

March 31, 2005." While pleading two counts–breach of contract and *quantum meruit*–the demand clause of the complaint sought judgment "in the sum of $1,153,545, on either the first or second counts, together with costs and disbursements and such other and further relief which this Court deems just and proper."[2]

The district court entered the defendants' default, and on August 18, 2005, referred the case to a magistrate judge to determine the proper amount of damages. Whereas the demand made in the complaint reflected interest through March 31, 2005, Silge filed a declaration and exhibit with the magistrate judge seeking prejudgment interest through August 2005, either calculated in accordance with the statutory prejudgment interest rate under New York law, or, alternatively, the actual rate of interest that Silge had paid to finance the loan. Copies of his damages submission were sent to the defendants and to their putative counsel, but the defendants did not respond or otherwise appear.

## II.

Magistrate Judge Andrew Peck issued his Report & Recommendation ("R&R") on September 29, 2005, recommending that the district court grant judgment only for the amount sought in the complaint, $1,153,545 (inclusive of prejudgment interest up to March 31, 2005)

---

[2] Defendants did not answer the complaint. However, by letter dated June 7, 2005, the law firm of Baker & Hostetler LLP contacted Judge Daniels seeking an adjournment of the initial scheduling conference. That letter stated that the firm was "considering whether to act as trial counsel for defendants" while the parties attempted to settle the matter. The court granted the adjournment, but the defendants did not answer or otherwise appear thereafter.

plus $290 in costs.[3]  The R&R determined, based on Silge's affidavit, that the outstanding balance of the loan when the defendants stopped making payments was $751,510.41.  As for the appropriate interest on that amount, the R&R concluded that because both of Silge's proposed methods of calculating interest would result in an award that "exceed[ed] the ad damnum clause in the complaint,' and because the complaint did not include any demand for interest past March 31, 2005, the damages should be capped at $1,153,545, the figure specified in the ad damnum clause," pursuant to Rule 54(c) of the Federal Rules of Civil Procedure.

Silge objected to the R&R, contending, much as he does here, that the circumstances of this case permit the default judgment to exceed the figure specified in the demand clause in the complaint.  On January 5, 2006, Judge Daniels adopted the R&R over Silge's objections.  His order concluded that under the plain meaning of Rule 54(c), Silge's damages must be capped at $1,153,545.  This timely appeal followed.

**III.**

Rule 54(c) of the Federal Rules of Civil Procedure provides:

> A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment.  Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings.

Fed. R. Civ. P. 54(c).  As commentators have noted, the purpose of the distinction made in the rule between default judgments and contested judgments:

---

[3] By way of costs, the magistrate judge awarded only the court's filing and service fee, for a total of $290.  Plaintiff does not challenge the costs award.

is that the defending party should be able to decide on the basis of the relief requested in the original pleading whether to expend the time, effort, and money necessary to defend the action. It would be fundamentally unfair to have the complaint lead defendant to believe that only a certain type and dimension of relief was being sought and then, should defendant attempt to limit the scope and size of the potential judgment by not appearing or otherwise defaulting, allow the court to give a different type of relief or a larger damage award.

10 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure*, § 2663 (1998) (footnote omitted).

Given the clear language and purpose of the rule, we find no fault with the district court's determination. The complaint sought a "demand[] [for] judgment against each of the defendants, jointly and severally, in the sum of $1,153,545," plus costs and disbursement. Although Silge insists that if his complaint is read as a whole, his intent to seek all interest accrued is plain, the text of Rule 54 is against him: It permits neither increases "in kind . . . or . . . in amount" from the figure specified in the demand for judgment. Fed. R. Civ. P. 54(c). *See Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 540-41 (1991) ("We give the Federal Rules of Civil Procedure their plain meaning. As with a statute, our inquiry is complete if we find the text of the Rule to be clear and unambiguous.") (internal quotation marks omitted). Silge could easily have drafted a complaint that included a distinct claim for "pre-judgment interest" in the demand clause. By operation of Rule 54(c), his failure to do so, intentional or not, ran the risk that his damages would be limited in the event of default.

This is a sensible rule. Because complaints can be long and intricate, a lawyer is often required to help a defendant gain a full understanding of the plaintiff's claims. By limiting damages to what is specified in the "demand for judgment," the rule ensures that a defendant

5

who is considering default can look at the damages clause, satisfy himself that he is willing to suffer judgment in that amount, and then default without the need to hire a lawyer.[4]

In reaching this result, we must reject Silge's argument that his demand for pre-judgment interest was implied by his generic request for "such other and further relief which this Court deems just and proper." It has been observed that "language . . . seeking 'such other and further relief as the court may deem proper' is mere boilerplate, meant to cover all bases as to the claims asserted in the complaint." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1277 n.6 (9th Cir. 2006). Whatever its import in other contexts, this formulaic language cannot substitute for the meaningful notice called for by Rule 54(c), which anticipates that defendants will look to the demand clause to understand their exposure in the event of default.

We have in the past declined the invitation to use such boilerplate to divine a claim for damages that would overcome problems of mootness. *See Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.*, 397 F.3d 77, 90 (2d Cir. 2005) (holding a general claim for "other such relief as the Court deems appropriate" cannot be read to include a compensatory award); *Fox v. Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 141-42 (2d Cir. 1994) (declining "to read a damages claim into the Complaint's boilerplate prayer for 'such other relief as the Court deems just and proper'"). We now hold, to the extent it was previously unclear, that the conventional

---

[4] We do not mean to suggest that it is ever wise or prudent for a defendant to default in reliance on the demand clause. Notwithstanding the limited protections afforded by Rule 54(c), a judgment in a civil case may result in significant and unforseen adverse consequences to the unwary defendant. Moreover, in certain circumstances, "a trial judge may enter a default judgment even though a plaintiff's claim is not for a sum certain." *See Appleton Elec. Co. v. Graves Truck Line, Inc.*, 635 F.2d 603, 611 (7th Cir. 1980). We need not decide what limitations, if any, Rule 54(c) would impose in that event.

additional demand for "such other and further relief as the Court deems just and proper" does not

constitute a demand for prejudgment interest.

Nor are we persuaded by Silge's contention, in the alternative, that this case should be

decided by *Gucci Am., Inc. v. Gold Ctr. Jewelry*, 997 F. Supp. 399, 405 (S.D.N.Y. 1998), *rev'd*

*on other grounds*, 158 F.3d 631 (2d Cir. 1998) ("there is no reason to permit [Rule 54(c)] to be

used as a shield when a defaulting party has full knowledge of the relief sought against it but

nevertheless ignores the proceedings").  That decision of the district court rests on an

interpretation of *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51 (2d Cir. 1971), *rev'd on other*

*grounds*, 409 U.S. 363 (1973), "the notorious case in which a $145 million default judgment was

awarded against TWA based on the failure of Howard Hughes to appear for a deposition." *Gucci*

*America,* 997 F. Supp. at 405.

To the extent the district court decision in *Gucci America* suggests that notice that comes

at the inquest stage would suffice to permit a plaintiff in a default action to recover for damages

not claimed in the complaint, we choose to read Rule 54(c) (and our own precedent) more

narrowly. While notice is one of the policy objectives underlying Rule 54(c), notice alone is

insufficient to satisfy the rule. The timing and method of such notice (*i.e.*, that it come *before* the

decision to default and be evident from the face of the complaint) are both critical to the analysis.

Our decision in *Trans World Airlines* is not to the contrary.  Unlike the case at bar, in *Trans*

*World Airlines* the defendant appeared at proceedings and was held to have defaulted by reason

of refusal to comply with court-ordered discovery, and was granted a trial on the question of

damages.  *See* 449 F.2d at 78.  As the decision stressed, the defendant persisted in the non-

compliance that led to the entry of a default judgment even after being put on notice of the full extent of damages sought. *Id.* at 79. Furthermore, the expansion of the relief beyond that actually claimed in the ad damnum clause was allowed only upon the grant of the plaintiff's motion to amend the complaint. *Id.* at 78. In these unusual circumstances, we concluded that Rule 54(c) did not bar the challenged damages award because no defendant could "in good conscience complain of any unfairness or surprise." *Id.*[5]

By contrast, the defaulted defendants in this case have never appeared.[6] While they were apparently mailed copies of plaintiff's submission to the magistrate judge, even that event did not occur until after the entry of default. The notice may therefore have seemed to come too late in the day for defendants to undo the consequences of their prior decision to default, greatly limiting its practical value. *See Appleton Elec. Co.*, 635 F.2d at 611 ("The apparent purpose of limiting default judgments to the amount prayed for is to protect defendants who choose to

---

[5] Although the text of Rule 54(c) would seem to never permit a default judgment to exceed the amount demanded in the complaint, the authorities are split on whether an implicit exception should be made where the defaulted defendant appeared and thereby was put on notice that damages might exceed the amount prayed for in the demand clause. *Compare Peitzman v. City of Illmo*, 141 F.2d 956, 962 (8th Cir. 1944) (concluding that where a defendant in default has appeared at a hearing on the amount of damages "[a]mendments to a pleading may be allowed . . . as to the relief prayed, subject to the right of the defendant, if taken by surprise or put to a disadvantage, to ask for a continuance or for time in which to prepare to meet the enlarged claim") *with Fong v. United States*, 300 F.2d 400, 413 (9th Cir. 1962) (stating "the mandate of the Rule is very simple, clear and decisive that a judgment shall not be different in kind from or exceed in amount that prayed for in the demand for judgment in default cases") (quotation marks omitted). Because the dimensions of such an exception are not before us, we do not address them here except to state that we do not view *Trans World Airlines*, a case involving highly unusual facts, as being dispositive of the issue.

[6] Respectfully, we must reject Silge's contention that the letter from Baker & Hostetler LLP constituted an appearance in the case. The district court found otherwise, and the letter itself emphasized that the firm had not yet been retained in connection with this matter.

default, relying on the damage ceilings contained in plaintiffs' prayers."). Accordingly, we agree with the district court that Rule 54(c) dictated the award be confined to the amount in the demand clause.

This is not to say that as of September 2005, Silge was totally without options. Rather than objecting to the R&R, a more productive alternative would have been to seek leave from the district court to use its discretion to set aside the default so the complaint could be amended to add a claim for pre-judgment interest. *See New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) ("A court may set aside any default that has entered for good cause shown, and if a judgment has entered on the default, the court is authorized to set the judgment aside in accordance with the provisions of Rule 60(b)."). This would have given the defendants a new opportunity to appear and contest Silge's claims. That Silge chose not to pursue this course of action suggests his claim of being treated unfairly may perhaps be overstated.

**IV.**

For the foregoing reasons, we hereby affirm the judgment of the district court granting Silge a judgment for damages in the amount of $1,153,545, plus $290 in costs and disbursement.