**Dr. Gerald FINKEL, as Chairman of the Joint Industry Board of the Electrical Industry, Plaintiff,**

v.

**The TRIPLE A GROUP, INC. and Michael Volpe, Defendants.**

**No. 07–CV–2653 (RRM)(SMG).**

United States District Court, E.D. New York.

April 27, 2010.

David Ronald Hock, Cohen, Weiss & Simon, LLP, New York, NY, Ilona Margaret Turner San Francisco, CA, for Plaintiff.

## ORDER

MAUSKOPF, District Judge.

By Motion filed November 8, 2007, Plaintiff moved for default judgment. By Order entered February 21, 2008, this Court granted the motion and referred the

issue of appropriate damages to the assigned Magistrate Judge for a Report and Recommendation. On September 2, 2009, Magistrate Judge Steven M. Gold issued a Report and Recommendation (the "R & R") recommending that Plaintiff be awarded damages in the total amount of $77,089.54, as well as interest on the amount of unpaid contributions. Judge Gold reminded the parties that, pursuant to Rule 72(b), any objection to the R & R was due September 18, 2009. No party has filed any objection.[1]

Pursuant to 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72, the Court has reviewed the R & R for clear error and, finding none, concurs with the R & R in its entirety. *See Covey v. Simonton,* 481 F.Supp.2d 224, 226 (E.D.N.Y.2007).

Accordingly, it is hereby ORDERED that Plaintiff be awarded damages in the total amount of $77,089.54 plus interest on unpaid contributions as outlined in the R & R.

SO ORDERED.

## REPORT AND RECOMMENDATION

STEVEN M. GOLD, United States Magistrate Judge.

Plaintiff, as Chairman of the Joint Industry Board of the Electrical Industry (the "Joint Board"), brings this action pursuant to the Employer Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132 and 1145, and Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Plaintiff seeks to recover monies he claims are owed by defendants The Triple A Group, Inc ("TAG") and Michael Volpe ("Volpe") to various benefit funds. Plaintiff also seeks to recover interest, liquidated damages, and attorney's fees and costs.

Upon plaintiff's application and in light of defendants' failure to appear in or otherwise defend this action, the Clerk of Court noted the default of the defendants on November 9, 2007. Docket Entry 11. The Honorable Roslynn R. Mauskopf granted plaintiff's motion for default judgment and referred the matter to then Magistrate Judge Kiyo A. Matsumoto for an inquest on damages. The case was subsequently reassigned to me.

## *DISCUSSION*

### A. Liability

 Once found to be in default, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. *See Greyhound Exhibitgroup, Inc. v. E.L. U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir.1992), *cert. denied,* 506 U.S. 1080, 113 S.Ct. 1049, 122 L.Ed.2d 357 (1993); *Montcalm Pub. Corp. v. Ryan,* 807 F.Supp. 975, 977 (S.D.N.Y.1992). A court, however, retains the discretion to determine whether a final default judgment is appropriate. *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 95 (2d Cir.1993). Even after a defendant has defaulted, "[a] plaintiff must ... establish that on the law it is entitled to the relief it seeks, given the facts as established by the default." *U.S. v. Ponte,* 246 F.Supp.2d 74, 76 (D.Me.2003) (citation omitted). *See also Au Bon Pain Corp. v. Artect, Inc.,*

---

**1.** On September 17, 2009, Plaintiff submitted a letter to the Court indicating, in a footnote, a potential objection to one of Judge Gold's recommendations "to the extent that the Court interprets it to prevent a new lawsuit for the additional amounts." (Docket No. 20.) By Order dated September 22, 2009, Plaintiff was directed to file formal objections to the R & R on or before October 23, 2009 in the event he wished this Court to review any portion of the R & R *de novo. (See* Electronic Order, entered September 22, 2010.) No objections were filed.

653 F.2d 61, 65 (2d Cir.1981) (recognizing the court's authority, even after default, to determine whether plaintiff has stated a cause of action).

### 1. Liability for Delinquent Contributions

█ Plaintiff has established the elements of liability required to state a claim pursuant to 29 U.S.C. § 1145. Section 1145 provides:

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.

Plaintiff is the administrator of multiemployer benefit plans as defined by ERISA.[1] Compl. ¶¶ 4, 5. Defendant TAG is an employer in an industry affecting interstate commerce as defined by ERISA. Id. ¶ 10. Local Union No. 3 of the International Brotherhood of Electrical Workers, AFL–CIO entered into a collective bargaining agreement ("2004 CBA"), effective May 13, 2004 through May 10, 2007, and a successor agreement ("2007 CBA"), effective May 10, 2007, with the New York Electrical Contractors Association, Inc. and the Association of Electrical Contractors, Inc. Id. ¶¶ 12, 13. On December 28, 2006, TAG signed a letter of assent ("LOA"), obligating it to comply with the 2004 CBA, and the later 2007 CBA.[2] Id. ¶ 12. Thus, pursuant to the LOA and the CBAs, TAG was required to make contributions on behalf of its union-member employees to the ERISA plans. Id. ¶ 14. In his complaint, plaintiff alleges that TAG failed to make contributions due to the ERISA plans for the period running from February 28, 2007, through May 23, 2007. Id. ¶¶ 35, 36. TAG's failure to make contributions as required by the CBAs constitutes a violation of ERISA.

█ Plaintiff's complaint also seeks additional monies allegedly owed by TAG, stating "the Joint Board collects assessments payable to the Union by certain employees . . . who authorize their employers to deduct from their wages . . . certain contributions" (the "Non–ERISA Plans").[3] Id. ¶ 6. TAG's failure to pay these contributions, while not a violation of ERISA, constitutes a breach of the LOA and CBAs. Sessa 11/7/07 Decl. ¶¶ 7–10. As plaintiff has established there were valid CBAs to which TAG was bound during the

---

1. The ERISA Plans include the Pension, Hospitalization and Benefit Plan of the Electrical Industry ("PHBP"), the Dental Benefit Fund of the Electrical Industry ("DEN"), the Annuity Plan of the Electrical Industry ("ANN"), the Deferred Salary Plan of the Electrical Industry ("401(k)"), the Educational and Cultural Trust Fund of the Electrical Industry ("E & C"), the Vacation–Holiday Unemployment Plan of the Electrical Industry ("VHUI") and the National Employees Benefit Fund ("NEBF"). Compl. ¶ 5.

2. Plaintiff failed to provide a copy of the LOA. In a prior action against defendants, plaintiff submitted an LOA signed by TAG dated January 5, 2004. See Jacobson v. Triple A Group,

Inc., No. 05–CV–3604 (E.D.N.Y.), Leeds Decl. Ex. B, Docket Entry 12. So long as it is clear that TAG was obligated to make contributions to plaintiff pursuant to an LOA binding it to comply with a CBA, the date TAG signed the LOA is irrelevant in this matter.

3. The Non–ERISA Plans for which plaintiff seeks contributions or damages include contributions to the Electrical Employers Self Insurance Safety Plan ("EESISP"), Local 3 Dues Assessments ("Dues"), and Joint Industry Board Contributions ("JIB"). Decl. of Christina A. Sessa in Supp. of Pl.'s Mot. for Default J., dated 11/7/07 ("Sessa 11/7/07 Decl.") ¶ 7, Docket Entry 9.

time period for which monies are owed, defendants are also liable to plaintiff for unpaid contributions to the Non–ERISA Plans as a matter of contract law.

### 2. Rule 54(c) and Liability for Delinquencies Occurring After Suit was Filed

■■■■ Plaintiff also seeks amounts that became due and owing during the pendency of this action. Federal Rule of Civil Procedure 54(c) generally limits recovery on a default judgment to the relief sought in the complaint; the rule provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Rule 54(c) is not violated, however, when a court awards damages that accrued during the pendency of the litigation if the complaint put defendant on notice that plaintiff might seek such damages. See King v. STL Consulting, LLC, 2006 WL 3335115, at *4–5 (E.D.N.Y. Oct. 3, 2006); Ames v. STAT Fire Suppression, Inc., 227 F.R.D. 361, 362 (E.D.N.Y.2005).

> The rationale . . . is that default is tantamount to consent to the entry of judgment, but this consent is effective only to the extent that it was duly informed. If greater relief had been demanded, the defendant might have entered the action and defended on the merits, both as to liability and the requested relief. It would therefore be unjust to award relief greater than that demanded in the judgment by default.

MOORE'S FEDERAL PRACTICE § 54.71[1] (2009). See also Silge v. Merz, 510 F.3d 157, 159 (2d Cir.2007) (holding that the district court correctly applied Rule 54(c) by declining to award prejudgment interest because plaintiff failed to seek ·it in his complaint).

In his motion for default judgment, plaintiff seeks unpaid 2007 and 2008 contributions other than those identified in the complaint. Compare Compl. ¶¶ 35, 36 with Hock Decl. ¶¶ 9, 10.[4] Here, the demand for contributions that became due after suit was filed is proper because the complaint includes a request for unpaid contributions that might become due and owing during the litigation. See Compl. wherefore cl. (B)(a) (seeking the amount due "for any weeks of required contributions that are unpaid as of the date judgment is entered and thereafter"). Accordingly, defendants had notice that they could be held liable if they failed to pay contributions for periods other than those specifically alleged in the complaint, and defendants may properly be held liable for those unpaid contributions that accrued during this litigation and any related damages.

■■■ Plaintiff also seeks interest and liquidated damages on contributions defendants paid late that accrued after this lawsuit was filed. See Hock Decl. ¶¶ 16, 18 and Exs. A, B. However, plaintiff did not plead in his complaint that these amounts were sought; rather, the complaint demands interest and liquidated damages only on "unpaid contributions due under the CBAs." Compl. wherefore cl. (B) (emphasis added). By requesting interest and liquidated damages on late-paid contributions in his motion for default judgment, plaintiff now seeks a judgment "different in kind" than that demanded in his complaint in violation of Rule 54(c). See Silge, 510 F.3d at 160–61. Plaintiff "could easily have drafted a complaint that included a distinct claim for [interest and liquidated damages on late-paid contributions] in the demand clause. By operation of Rule

---

**4.** "Hock Decl." refers to the Supplemental Declaration of David R. Hock in Support of

Plaintiff's Motion for Default Judgment, dated 7/3/08, Docket Entry 17.

54(c), his failure to do so, intentional or not, ran the risk that his damages would be limited in the event of default." *Id.* at 160. Accordingly, I recommend that defendants be found not liable for these damages.[5]

### 3. Volpe's Personal Liability

 Finally, the question arises whether Volpe, upon whom plaintiff seeks to impose personal liability for some of the contributions and damages, may be held individually liable under ERISA. ERISA specifically provides for liability against an "employer," and a corporate officer is ordinarily not personally liable for the ERISA obligations of the corporation. An officer may be held personally liable in cases involving fraud or facts warranting piercing the corporate veil. *See Cement & Concrete Workers Dist. Council Welfare Fund v. Lollo*, 35 F.3d 29, 35 (2d Cir.1994); *Sasso v. Cervoni*, 985 F.2d 49, 50–51 (2d Cir. 1993). In addition, and pertinent here, a corporate officer may be held individually liable if there is "clear and explicit evidence" of the parties' intent that he be personally bound. *See Mason Tenders Dist. Council Welfare Fund v. Thomsen Constr. Co.*, 301 F.3d 50, 53–54 (2d Cir. 2002) (noting that "New York law requires that there be 'clear and explicit' evidence of the defendant's intent to add personal liability to the liability of the entity," and that "the high degree of intention ... goes beyond the mere presence of a personal liability clause in the signed agreement"); *see also Lollo*, 35 F.3d at 35.

In this case, Volpe entered into a settlement agreement in a prior litigation (the "Stipulation") in which he explicitly assumed personal liability for some of plaintiff's claims. More specifically, the Stipulation provides that Volpe will be personally liable for all contributions due under the 2004 CBA in effect through May 10, 2007. Compl. ¶¶ 34, 37, 56; Sessa 11/7/07 Decl. Ex. F. The Stipulation states that TAG and Volpe "admit and acknowledge that they owe, jointly and severally, [past] contributions to the [Joint Board]" and "agree to make all weekly contributions required under the [2004] CBA as they become due." Sessa 11/7/07 Decl. Ex. F ¶¶ 1, 6. In addition, Volpe signed the Stipulation twice—once on behalf of TAG and once on behalf of himself, *see id.*, following the "nearly universal practice" utilized where a corporate officer simultaneously assumes corporate and individual liability. *Thomsen*, 301 F.3d at 54. Plaintiff has thus established that Volpe is jointly and severally liable with TAG for delinquent contributions that became due under the 2004 CBA that was in effect through May 10, 2007.

### B. Damages

 Although the allegations of a complaint pertaining to liability are

---

**5.** I further note that ERISA does not provide a basis for statutory damages on contributions that were paid, albeit untimely, before a lawsuit is filed. The damages outlined in § 1132(g)(2) specifically refer to interest and liquidated damages as percentages of the *unpaid* contributions. *See* 29 U.S.C. §§ 1132(g)(2)(B) ("interest on the unpaid contributions"), (g)(2)(C)(ii) ("liquidated damages ... in an amount not in excess of 20 percent ... of the amount determined by the court under subparagraph (A)"); *Iron Workers Dist. Council of W. N.Y. & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators &* *Erectors, Inc.*, 68 F.3d 1502, 1507 (2d Cir. 1995) (explaining that to obtain one or all of the measures of relief set forth in 29 U.S.C. § 1132(g)(2), "the action must be one to enforce the obligation to pay contributions under § 1145, and therefore no such suit can be commenced in the absence of unpaid contributions"); *King v. Silver Streak*, 05–CV–1085 (SMG) (E.D.N.Y. Feb. 2, 2007), at 9. Nonetheless, as a matter of contract law, plaintiff would be entitled to interest and liquidated damages on late-paid contributions if those amounts had been properly demanded in the complaint.

deemed admitted upon entry of a default judgment, allegations relating to damages are not. *See Greyhound Exhibitgroup,* 973 F.2d at 158. Rather, claims for damages generally must be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed. *Id.* A court must ensure that there is a basis for the damages sought by a plaintiff before entering judgment in the amount demanded. *See Fustok v. ContiCommodity Services, Inc.,* 873 F.2d 38, 40 (2d Cir.1989). A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence. *See* FED. R. CIV. P. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.,* 951 F.2d 504, 508 (2d Cir.1991); *Fustok,* 873 F.2d at 40. Plaintiff has submitted attorneys' declarations detailing plaintiff's calculation of damages with supporting documentation.[6] Docket Entries 9, 17, 18. Defendants have not submitted any opposition. Accordingly, a hearing on the issue of damages is not warranted.

As noted above, plaintiff seeks unpaid ERISA contributions, unpaid contributions to Non–ERISA Plans, interest, liquidated damages, attorney's fees and costs. For ERISA contributions, the damages recoverable for a violation of § 1145 are enumerated in § 1132(g)(2), which provides that the court shall award the plan as follows:

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of-

(I) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent ... of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). For the Non–ERISA Plans, plaintiff's damages are limited to those provided for in the CBAs and trust agreements.

### 1. Unpaid Contributions

When plaintiff originally filed this action on June 29, 2007, he sought unpaid contributions alleged to be due to ERISA and Non–ERISA Plans for various weeks between March and May 2007. Compl. ¶¶ 35, 36. While this action was pending, TAG paid the outstanding contribution amounts owed. Sessa 11/7/07 Decl. ¶ 15; Hock Decl. ¶¶ 9, 10. TAG, however, failed to pay additional contributions that became due after the case was filed. Hock Decl. ¶ 21. Consequently, plaintiff filed supplemental declarations providing updated figures on July 3, 2008.[7] Hock Decl.; Suppl. Decl. of Christina A. Sessa in Supp. of Pl.'s Mot. for Default J., dated 7/3/08 ("Sessa 7/3/08 Decl."), Docket Entry 18.

---

**6.** *See* Hock Decl.; Sessa 7/3/08 Decl.; Sessa 11/7/07 Decl.; Decl. of Ilona M. Turner in Supp. of Pl.'s Mot. for Default J., dated 11/8/07 ("Turner Decl.").

**7.** During the time permitted for objections, plaintiff shall notify the court if TAG pays (or has already paid) any monies alleged to be due and owing in the Hock Declaration.

Moreover, I respectfully recommend that plaintiff be precluded from seeking any additional contributions that plaintiff alleges have become due and owing since July 3, 2008, the date of plaintiff's most recent submission in support of his motion for default judgment. *See* FED. R. CIV. P. 54(c); *Silge,* 510 F.3d at 160–61.

As of July 3, 2008, plaintiff alleges the following 2007 contributions are due and owing:

| | | |
|---|---|---|
| PHBP | 1/17/07, 1/24/07, 2/21/07 | $ 14.94 |
| VHUI/401(k) | 10/17/07–10/31/07 | $10,597.86 |
| VHUI/401(k) | 11/7/07–12/19/07 | $11,909.79 |
| **TOTAL** | | $22,522.59 |

Hock Decl. ¶¶ 9, 10, 21; Sessa 11/7/07 Decl. Ex. K; Sessa 7/3/08 Decl. Exs. B and E. Plaintiff's calculations appear correct and I therefore recommend that these funds be awarded $22,522.59 for unpaid 2007 contributions. In addition and as discussed above, defendant Volpe is jointly and severally liable with TAG for contributions due prior to May 10, 2007. Accordingly, his joint and several liability is limited to the $14.94 in unpaid contributions due to the PHBP fund.

 Plaintiff also states that TAG has failed to remit contributions to the Plans for the seven weeks ending March 26, 2008 through April 16, 2008 and June 4, 2008 through June 18, 2008. Hock Decl. ¶ 21. Furthermore, TAG has failed to report to plaintiff any wages and hours worked by union employees since the week ending April 9, 2008. Sessa 7/3/08 Decl. ¶ 9 and Ex. C. If a plaintiff establishes that an employer's records are inadequate, such as where an employer fails to submit required payroll reports, the court may estimate the damages to be awarded. *See Jacobson v. Empire Elec. Contractors, Inc.,* 2008 WL 819948, at *3 (E.D.N.Y. Mar. 25, 2008). Accordingly, plaintiff has calculated the amount of unpaid 2008 contributions based on earlier payroll reports the Joint Board did receive. The early 2008 payroll reports (for weeks ending January 9, 2008 through March 19, 2008, *see* Sessa 7/3/08 Decl. Ex. A, and for the week ending April 9, 2008, *see id.* Ex. C) indicate that TAG employed one union member and paid the following amounts:

| | |
|---|---|
| PHBP | $694.29 |
| DEN | $ 63.23 |
| ANN | $200.00 |
| E & C | $ 2.89 |
| NEBF | $ 66.30 |
| Dues | $ 22.10 |
| JIB | $ 20.00 |

Sessa 7/3/08 Decl. Ex. A. These amounts generally correspond to the rates indicated by the Joint Board for "A" Rated Journeypersons in a May 16, 2007 memo to employers ("JIB Memo").[8] Sessa 11/7/07

---

8. Plaintiff has failed to identify the class of the employee for whom he seeks benefits. Because the amounts generally correspond to the rates indicated for "A" Rated Journeypersons in the JIB Memo, *see* Sessa 11/7/07 Decl. Ex. B75–79, I am applying these rates for all the delinquent contributions. I note, however, that the rates for the PHBP and ANN funds increased effective May 10, 2008, *see id.* Ex. B77–79, and, as a result, there should have been an increased demand for the three weeks in June, 2008. Because plaintiff requested the same rates for the June, 2008 contributions as it did for the earlier contributions and TAG thus did not have notice of a higher amount, I respectfully recommend that TAG's liability be limited to the amounts plaintiff sought in his motion.

In addition, I am unable to verify fully the calculation of amounts owed to the E & C fund, Dues, and JIB. Again, the rates identified in the JIB Memo indicate that E & C contributions are 1.033%. *Id.* Ex. B77. While 1.033% of $2,080 (the employee's standard gross wages) is $21.49, plaintiff seeks $2.89. *See* Hock Decl. Ex. E at 4 (calculating $2.89 in unpaid E & C Contributions per pay period); Sessa 7/3/08 Decl. Ex. A (reflecting a deduction of $21.49, at a rate of 1.033%, for the E & C fund). The JIB contribution is 1% of the employee's wages, which amounts to $20.80, yet plaintiff seeks $20.00. Sessa 11/7/07 Ex. B77–78; Hock Decl. Ex. F. Because plaintiff requests lower amounts in his motion than it appears are owed, I recommend that plaintiff's calculations be accepted. Finally, I have been unable to locate where the contribution rate for Dues is stated. Nonetheless, TAG previously paid Dues in the amount of $22.10 per week, *see* Sessa 7/3/08 Decl. Exs. A, C, and I therefore recommend that this amount be used to calculate the unpaid Dues.

Decl. Ex. B75–79. Multiplying the above weekly contribution amounts by the seven weeks for which contributions are owed, plaintiff is entitled to the following amounts in unpaid 2008 contributions:

| | |
|---|---|
| PHBP | $4,860.03 |
| DEN | $ 442.61 |
| ANN | $1,400.00 |
| E & C | $ 20.23 |
| NEBF | $ 464.10 |
| Dues | $ 154.70 |
| JIB | $ 140.00 |
| **TOTAL** | **$7,481.67** |

With respect to the 401(k) and VHUI contributions, plaintiff alleges that these funds are owed $850.97 per week for the period of weeks ending January 9, 2008 through April 16, 2008 and June 4, 2008 through June 18, 2008. Hock Decl. ¶ 21 and Ex. E. Thus, plaintiff calculates that the funds are owed a total of $15,317.46 for these eighteen weeks.[9] Plaintiff's calculations appear correct and I recommend that the VHUI/401(k) Plans be awarded a total of $15,317.46 for unpaid 2008 contributions.

Finally, with respect to contributions due to the EESISP fund, plaintiff calculates the weekly contribution due as $138.13, *see* Hock Decl. Ex. E, but the contribution due for the EESISP, unlike the other funds, is not listed on the payroll reports, *see* Sessa 7/3/08 Decl. Ex. A.

Plaintiff states that the contribution rate for this fund depends on the type of work performed by the employee and provides a list identifying the various classes of employees and respective rates. Sessa 11/7/07 Decl. ¶ 9 and Ex. D. Plaintiff has not identified the class of employee for whom he seeks benefits, but appears to be applying the rate listed on the schedule for contractors (6.25% times $2,210.00 (reportable gross wages) equals $138.13). Accordingly, I respectfully recommend that the EESISP fund be awarded $966.91 ($138.13 × 7 weeks of contributions owed) in unpaid contributions.[10]

In sum, the Joint Board has demonstrated that plaintiff is owed $46,288.63 ($22,522.59 + $7481.67 + $15,317.46 + $966.91) in unpaid contributions to the ERISA and Non–ERISA Plans.

### 2. Interest

Several issues arise with respect to the question of interest, including what funds are entitled to interest and on which contributions, what rate to apply, and when interest should begin to accrue.

First, the funds are entitled to interest on all unpaid contributions. Clearly, plaintiff is entitled to interest on

---

**9.** Using the rates indicated in the JIB Memo, I calculate different amounts owed for these funds. For example, according to the JIB Memo, the VHUI fund rate is 13% of the employee's wages plus $2.00 per hour. *See* Sessa 11/7/07 Decl. Ex. B77–79. Thus, I calculate the amount due the VHUI fund as $350.40 per week [(13% × $2,080) + ($2 × 40 hours)]. Similarly, the rate indicated in the JIB Memo for the 401(k) plan is 7.65% of gross wages plus 1% employee salary deferral (for a total deduction of 8.65%). *See id.* I calculate the amount due the 401(k) plan as $191.17 (8.65% × $2,210) per week. Accordingly, I calculate that the VHUI/401(k) Plans are entitled to $541.57 per week. Plaintiff does not explain how it calculated the higher amount of $850.97 due per week. Plaintiff, however, provided copies of the 401(k) re-

ports that indicate that TAG owed $850.97 per week. Sessa 7/3/08 Decl. Ex. B. Although TAG failed to submit 401(k) reports for the period of weeks ending January 9, 2008 through February 6, 2008 and for the period of weeks ending April 16, 2008 through June 18, 2008, *see id.*, there was only one employee in 2008, based on the remittance reports, *see id.* Ex. A, so the amount due the 401(k) plan should have remained constant throughout the delinquency period.

**10.** Plaintiff is directed to confirm during the time allowed for objections to this Report and Recommendation that 6.25%, the rate for contractors, is the correct rate to apply for the employee identified in the payroll reports.

all unpaid ERISA contributions sought in the complaint, including both currently unpaid contributions that accrued while the lawsuit was pending and those contributions that defendant paid prior to judgment but were unpaid at the time plaintiff commenced suit. *See* 29 U.S.C. § 1132(g)(2); *Iron Workers,* 68 F.3d at 1506. With respect to the Non–ERISA Plans, the Second Circuit permits an award of prejudgment interest for LMRA claims at the court's discretion. *See Lodges 743 & 1746, Int'l Ass'n of Machinists & Aerospace Workers, AFL–CIO v. United Aircraft Corp.,* 534 F.2d 422, 446–47 (2d Cir.1975); *see also Finkel v. Omega Commc'n Servs., Inc.,* 543 F.Supp.2d 156, 162 (E.D.N.Y.2008); *Finkel v. Amtex Elec. Corp.,* 2007 WL 4591226, at *4 (E.D.N.Y. Dec. 27, 2007).

The next question is what interest rate applies to the various funds. For ERISA violations, § 1132 states that interest is calculated "using the rate provided for under the plan, or, if none, the rate prescribed under section 6621 of Title 26." 29 U.S.C. § 1132(g)(2). Here, only the PHBP and NEBF trust agreements provide for specific interest rates.[11] *See* Sessa 11/7/07 Decl. Ex. C. Accordingly, for all

other ERISA Plans, the rate prescribed under § 6621 should be applied. *See id.* ¶¶ 32, 33 and Exs. M, N. For the Non–ERISA Plans, the rate to apply for prejudgment interest is within the court's discretion. *See Lodges 743 & 1746,* 534 F.2d at 446–47; *Omega Communication Servs., Inc.,* 543 F.Supp.2d at 162; *Amtex Elec. Corp.,* 2007 WL 4591226, at *4. Plaintiff asks for interest on the Non–ERISA Plans using the § 6621 rate, which ranged from 6% to 8% per annum.[12] Hock Decl. Exs. B, C and F.[13] These rates are reasonable and I recommend that they be applied to calculate the interest to be awarded.

Finally, with respect to the question of when the interest accrues, interest should accrue from the date the contributions became due and owing.[14] New York law permits the accrual of pre-judgment interest from a "single reasonable intermediate date" when damages are incurred over a period of time. *See* N.Y. C.P.L.R. 5001(b). I recommend applying this method here as a practical way of calculating interest. The amount of interest on the unpaid contributions should be calculated by the Clerk of Court from the dates indicated

---

11. Effective June 1, 2007, the Joint Board adopted the § 6621 rate for the PHBP Plan. Hock Decl. ¶ 25. I note that the complaint seeks interest at only the § 6621 rate, Compl. wherefore cl. (B), but I will use the rates provided for in the Plans, as ERISA requires.

12. Plaintiff seeks interest on the contributions due the Non–ERISA Plans under the 2004 CBA at the rate of 8.75%, the rate used for PHBP delinquencies, which is the prime rate plus ½%. Hock Decl. ¶ 27 and Exs. B, H. Plaintiff fails, however, to point to any document calling for this higher rate to be applied as opposed to the § 6621 rate. *Id.* Moreover, the complaint specifically seeks interest at the § 6621 rate. Compl. wherefore cl.(B). Accordingly, I recommend that the interest rate for all Non–ERISA delinquencies be calculated at the § 6621 rate.

13. The Hock Declaration cites to Exhibit F but there is no Exhibit F divider. It appears, however, that the last seven pages of Exhibit E are actually Exhibit F.

14. The CBAs and trust agreements are silent as to when the contributions are due—whether they are due weekly or monthly, at the time of the reports are due or some time thereafter. Sessa 11/7/07 Decl. Exs, B, C. The Stipulation states that contributions are due fifteen business days after the end of the reporting week. *See id.* Ex. F ¶ 6. For the sake of simplicity, I assume for purposes of the interest calculations in this Report that payments were due on the last day of the reporting week for which they were due.

below through the date final judgment is entered.

I turn now to the calculation of interest for the various Plans.

For the 2007 PHBP contributions, the interest rate is "one-half percent (½%) above the prime rate quoted by Citibank as of the first of each calendar quarter." *See* Sessa 11/7/07 Decl. Ex. C. The prime rate during the relevant part of 2007 was 8.25%. *See* http://www.wsjprimerate.us/wall_street_journal_prime_rate_istory.htm. Accordingly, I recommend that plaintiff be awarded interest on the 2007 PHBP delinquency of $14.94 at the rate of 8.75% beginning from May 30, 2007.[15] For the 2007 VHUI/401(k) delinquency of $22,507.65, I recommend that plaintiff be awarded 8% interest beginning from November 17, 2007, a midpoint between October 17, 2007 and December 19, 2007, the period of delinquency.

For the 2008 PHBP, DEN, ANN, and E & C delinquencies totaling $6,622.87, I consider that the prime rate hovered between 4 and 6.5% during 2008 and recommend that plaintiff be awarded 6% interest beginning from May 1, 2008, a midpoint of the delinquency period that ran from March 26, 2008 through June 18, 2008. For the VHUI/401(k) delinquencies of $15,317.46, I recommend that plaintiff be awarded 6% interest beginning from March 12, 2008, a midway date for the period from January 9, 2008 through June 18, 2008, the period of delinquency. As noted above, the NEBF has its own interest rate of 10%, compounded monthly, and I recommend that plaintiff be awarded this interest rate beginning from May 1, 2008 on the delinquency of $464.10.

When plaintiff filed his complaint, he alleged unpaid contributions for the period of weeks ending March 28, 2007 through May 23, 2007.[16] Compl. ¶ 36. While this litigation was pending, defendants paid the principal of these contributions. Plaintiff, however, is still owed the ERISA statutory damages on these contributions, as provided in § 1132(g)(2). Accordingly, plaintiff is entitled to recover the following amounts in interest:

| Plan | Total Interest Due | Portion of Interest Due for which Volpe is Personally Liable |
| --- | --- | --- |
| PHBP | $179.32 | $125.42 |
| DEN | $ 10.35 | $ 6.65 |
| VHUI | $ 79.16 | $ 54.91 |
| ANN | $ 45.19 | $ 31.35 |
| E & C | $ 1.58 | $ .65 |
| NEBF | $ 16.48 | $ 11.41 |
| 401(k) | $315.80 | --- |
| Total | $647.88 | $230.39 |

Hock Decl. ¶¶ 11, 48, Exs. A, H.[17]

---

**15.** The interest for the 2007 PHBP contributions should be calculated beginning from May 30, 2007, the date on which the Joint Board requested TAG pay the deficiency. *See* Sessa 11/7/07 Decl. Ex. K.

**16.** The 401(k) plan had unpaid contributions beginning from February 28, 2007. Compl. ¶ 36.

**17.** The amounts in the chart for "Total Interest Due" are derived from pages 9–14 of Exhibit A to the Supplemental Hock Declaration, but only those amounts corresponding to contributions due before the complaint in this action was filed are included. Thus, for example, Exhibit A lists interest due for late-paid contributions to PHBP on page 9. The amount in the chart, $179.32, is the total interest due up to week 21, the last week before the complaint was filed that is listed on the table in Exhibit A. The amounts listed in "Portion of Interest Due for which Volpe is Personally Liable" are derived from Exhibit H to the Supplemental Hock Declaration, which appears to list again the interest calculations already reported in Exhibit A, but only for the dates covered by the Stipulation entered into by Volpe and providing for his personal liability.

As a matter of contract law, plaintiff is entitled to the following interest on the NonERISA contributions for the period of weeks ending March 28, 2007 through May 23, 2007:

| Plan | Interest Due | Volpe's Personal Liability |
|------|-------------|---------------------------|
| JIB | $ 4.85 | $ 3.37 |
| Dues | $ 4.99 | $ 3.46 |
| EESISP | $31.21 | $ 1.75 |
| BENE DLQ | $ 2.12 | $ 1.75 |
| Total | $43.17 | $10.33 |

*Id.,* Exs. B, H.[18]

Plaintiff also seeks interest on late-paid contributions that were paid late after this lawsuit was filed. *See Id.* Exs. A, E, and F. As discussed above, plaintiff failed to meet the notice requirements of Rule 54(c) with respect to this demand. Because I recommend that defendants are not liable for these interest amounts, I do not recommend any award for interest on these late-paid contributions.

Plaintiff also seeks $439.40 in interest for pre-litigation (from 2005 through 2007) late-paid contributions to the 401(k) Plan.[19] *Id.* ¶ 19; *see also* Sessa 11/7/07 Decl. Ex. O. In his complaint, however, plaintiff alleged that this interest amounted to $398.19. Compl. ¶ 40. Plaintiff fails to explain the discrepancy. Moreover, plaintiff filed a previous action against defendants for unpaid contributions in 2005, and a judgment was entered against defen-dants in January, 2007 for those unpaid contributions, interest, and liquidated damages. Based on the evidence submitted, it is not clear whether this $439.40 in 401(k) interest was the subject of the previous 2005 action and 2007 judgment. I therefore recommend denying plaintiff's application for this amount.

### 3. Liquidated Damages

Plaintiff also seeks 20% of the unpaid ERISA contributions as liquidated damages. Turner Decl. ¶ 21. As discussed above, I recommend limiting an award of liquidated damages to those contributions that were unpaid at the time this suit was commenced and for those that accrued during the litigation but remain unpaid. *See* 29 U.S.C. § 1132(g)(2)(C)(ii); *Iron Workers,* 68 F.3d at 1507. For the contri-butions subject to § 1132(g)(2)(C), ERISA provides for liquidated damages in an amount equal to the greater of interest on unpaid contributions, or an amount provid-ed for in the governing plan not to exceed 20% of the delinquent contributions. 26 U.S.C. § 1132(g)(2). The CBA provides for liquidated damages in the amount of 20% of the delinquent contributions.[20] Sessa 11/7/07 Decl. Ex. B, at 12 (Section 13). I therefore recommend that plaintiff be awarded liquidated damages in the total amount of $10,573.51, as provided in the following chart:

| Plan | 20% of the Unpaid 2007 Contributions | 20% of the Unpaid 2008 Contributions | 20% of the Late-paid Contributions (March, 28, 2007 through May 23, 2007) | Total | Volpe's Personal Liability |
|------|-------------|-------------|-------------|-------|--------------|

**18.** Plaintiff calculated the interest for these Non–ERISA contributions at the rate of 8.75%. Hock Decl. Exs. B, H. As discussed above, I recommend applying the § 6621 rate, which is 8%, and I calculated the above amounts using a rate of 8%.

**19.** A letter sent to TAG by the Joint Board dated July 13, 2007, demands interest in the amount of $439.40. Sessa 11/7/07 Decl. ¶ 35, Ex. O.

**20.** In addition, the PHBP trust agreement specifically provides for liquidated damages in the amount of 20%. Hock Decl. ¶ 40; Sessa 11/7/07 Decl. Ex. C.

| | | | | Total: | $11,687.35 | $1,677.02 |
|---|---|---|---|---|---|---|
| PHBP | $ 2.99 | $ 972.01 | $1,218.82 | | $ 2,193.82 | $ 881.07 |
| DEN | --- | $ 88.52 | $ 77.11 | | $ 165.63 | $ 50.92 |
| ANN | --- | $ 280.00 | $ 336.00 | | $ 616.00 | $ 240.00 |
| E & C | --- | $ 4.05 | $ 11.84 | | $ 15.89 | $ 4.99 |
| NEBF | --- | $ 92.82 | $ 111.38 | | $ 204.20 | $ 79.56 |
| 401(k)/VHUI | $4,501.53 | $3,063.49 | $ 926.79 | | $ 8,491.81 | $ 420.98 |

Hock Decl. Exs. A, H.[21]

#### 4. Bounced Checks

Plaintiff also alleges that two checks totaling $7,310.48, both dated June 12, 2008, were returned for insufficient funds and seeks an award for this amount.[22] Sessa 7/3/08 Decl. ¶ 12; Hock Decl. ¶ 41. Plaintiff states: "As interest and liquidated damages on the contributions these checks were submitted to pay were calculated in the sections on late-paid contributions, the Joint Board seeks an award for the dishonored checks in the amount of $7,310.48." Hock Decl. ¶ 41. I infer from this assertion that, although interest and liquidated damages on these contributions are part the damages calculations submitted by plaintiff, the contributions these checks purportedly paid are not. Accordingly, plaintiff should be awarded $7,310.48 as compensation for the failure of these checks to clear. If the inference I make in recommending an award including this amount is incorrect, plaintiff shall so advise the court during the time for filing objections to this report.

#### 5. Attorney's Fees and Costs

Plaintiff is entitled to recover reasonable attorney's fees and costs. Upon a finding that defendants have been delinquent in paying contributions, liability for attorney's fees under § 1132(g)(2) is mandatory. See Iron Workers, 68 F.3d at 1506. Counsel has submitted contemporaneous time records with the application for damages, in compliance with New York State Association for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir.1983). Turner Decl. Ex. E. Plaintiff seeks reimbursement for $10,302.50 in attorney's fees. Id. ¶ 24. The hourly rates, ranging from $200 to $225 per hour for attorneys and $75 per hour for paralegals, and time expended appear reasonable and should be approved. In addition, plaintiff seeks $818.53 in costs for filing, service, postage, and photocopying. Id. ¶ 28. This amount

**21.** The amounts in the chart are derived as follows: The amounts in the column headed "20% of the Unpaid 2007 Contributions" equal 20% of the amounts indicated above on page 9 of the text of this Report; the amounts in the column headed "20% of the Unpaid 2008 Contributions" equal 20% of the amounts indicated above on page 11 of the text of this Report; the amounts in the column headed "20% of the Late-paid Contributions" are derived from Exhibit A to the Supplemental Hock Declaration, but only for those weeks prior to the filing of this lawsuit. The amounts in the column headed "Volpe's Personal Liability" are derived from Exhibit H to the Supplemental Hock Declaration. In addition to the amount of liquidated damages for late-paid ERISA contributions identified in Exhibit H of the Hock Declaration, Volpe is also liable for $2.99 in liquidated damages for the 2007 PHBP delinquency.

**22.** Plaintiff has provided copies of these returned checks totaling $7,310.48, bearing notational references to "weeks 50, 8, 9, 10, 11, 12." Sessa 7/3/08 Decl. Ex. F.

is reasonable and compensable and I recommend that plaintiff be awarded this amount for costs. *See also Morin v. Nu-Way Plastering Inc.*, 2005 WL 3470371, at *4 (E.D.N.Y. Dec. 19, 2005) (awarding costs for filing fees, service of process, legal research, and postage). Thus, I respectfully recommend that plaintiff be awarded a total of $11,121.03 in attorney's fees and costs.[23]

### CONCLUSION

For the reasons set forth above, I respectfully recommend that TAG be found liable to the plaintiff in the total amount of $77,089.54, as follows:

(i) $46,288.63 in unpaid contributions;

(ii) $7,301.48 in checks that failed to clear;

(iii) $691.05 ($647.88 + 43.17) in interest;

(iv) $11,687.35 in statutory liquidated damages; and

(v) $11,121.03 ($10,302.50 in attorney's fees and $818.53 in costs).

In addition, I recommend that the Clerk of Court calculate the following interest on the unpaid contributions at the time final judgment is entered:

(i) on the 2007 PHBP delinquency of $14.94 at the rate of 8.75% beginning from May 30, 2007;

(ii) on the 2007 VHUI/401(k) delinquency of $22,507.65 at the rate of 8% beginning from November 17, 2007;

(iii) on the 2008 PHBP, DEN, ANN, and E & C delinquencies ($4,860.03, $442.61, $1,400.00, and $20.23 respectively), at the rate of 6% beginning from May 1, 2008; and

(iv) on the 2008 VHUI/401(k) delinquency of $15,317.46 at the rate of 6% interest beginning from March 12, 2008;

(v) on the NEBF 2008 delinquency of $464.10 at the rate of 10%, compounded monthly, beginning from May 1, 2008.[24]

Of the $69,788.06 owed, defendant Volpe is jointly and severally liable with TAG in the amount of $2,266.31 for delinquencies that became due on or before May 10, 2007, including unpaid contributions, interest on unpaid and late-paid contributions, liquidated damages, and attorney's fees and costs, as follows:

(i) $14.94 in underpaid PHBP contributions;

(ii) interest on the 2007 PHBP delinquency of $14.94, as calculated by the Clerk of Court at the time of judgment, as described above;

(iii) $240.72 ($230.39 + $10.33) in interest on 2007 contributions;

(iv) $1,677.02 in liquidated damages; and

(v) $333.63 in attorneys' fees and costs.

Any objections to this Report and Recommendation must be filed within ten days

---

**23.** Although plaintiff seeks to hold Volpe liable for the full amount of fees and costs, *see* Hock Decl. ¶ 51, plaintiff fails to provide any basis on which to hold him jointly and severally liable for the full amount. Accordingly, I respectfully recommend that Volpe's personal liability be limited to his share of the fees and costs. I calculate Volpe's share by totaling the amounts for which he is liable and dividing it by the joint and several total amounts (excluding fees and costs), which amounts to approximately 3% of TAG's liability. Three percent of the $11,121.03 in fees and costs equals $333.63.

**24.** The following formula may be used to calculate the compound interest for the NEBF contributions: $(464.10 \times (1.0083)^a)-464.10$, where $a = 12 \times (b/365)$ and $b =$ the number of days between May 1, 2008 and the date the Clerk enters judgment.

of this Report and in any event no later than September 18, 2009. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir.1989). Plaintiff is hereby directed to serve copies of this Report and Recommendation upon defendants at their last known addresses, and to file proof of service with the Court.