Carolyn TAAFFE, Plaintiff,

v.

**LIFE INSURANCE COMPANY OF NORTH AMERICA,**
Defendant.

No. 09 Civ. 6710(FM).

United States District Court,
S.D. New York.

Feb. 23, 2011.

Scott Madison Riemer, Riemer & Associates, L.L.C., New York, NY, for Plaintiff.

Emily Anna Hayes, Fred N. Knopf, Wilson, Elser, Moskowitz, Edelman & Dicker, White Plains, NY, for Defendant.

### DECISION AND ORDER

FRANK MAAS, United States Magistrate Judge.

Plaintiff Carolyn Taaffe ("Taaffe") commenced this action against defendant Life Insurance Company of North America ("LINA") under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* Taaffe now seeks to recover prejudgment interest on $165,000 in long term disability benefits paid by LINA on April 20, 2010, as well as the attorneys' fees and costs that she incurred in prosecuting this case.

For the reasons set forth below, the Court awards Taaffe $66,062.26, consisting of $12,244.68 in prejudgment interest,

$53,305.88 in attorneys' fees, and $511.70 in costs.

## I. Background

### A. Taaffe's Disability Coverage

Taaffe worked at UBS Financial Services Inc. ("UBS") as a Senior Trading Assistant and General Securities Principal. (Compl. (ECF No. 1) ¶ 8). As a UBS employee, Taaffe had both short term disability ("STD") and long term disability ("LTD") insurance coverage. (See Reply Affirm. of Scott M. Riemer, Esq., dated June 21, 2010 (ECF No. 24) ("Reply Affirm."), Ex. H at 1141–45 ("STD Plan"), 1146–60 ("LTD Plan")).[1]

Under the STD Plan, UBS employees are eligible to receive STD benefits if they meet the STD Plan's definition of "having a disability" or "being disabled." (STD Plan at 1142). To qualify for benefits, an employee therefore must be "unable to perform all the material and substantial duties of [his or her] occupation on an active employee basis because of an illness or sickness." (Id.). Pursuant to an administrative services agreement with UBS, LINA is responsible for administering claims for STD benefits by UBS employees. (Aff. of Richard Lodi, sworn to June 10, 2010 (ECF No. 20) ("Lodi Aff."), ¶ 3). UBS, in turn, is responsible for the payment of STD benefits. (Id.; STD Plan at 1142). The STD Plan provides, however, that UBS will pay STD benefits only for a period of 180 days after the employee's STD claim is approved. (STD Plan at 1142).

The LTD Plan states that if it becomes apparent that an employee seeking or receiving STD benefits will be unable to return to work before the expiration of the 180–day STD benefits period, LINA "will begin to transition [the] claim to a [LINA] LTD Case manager."[2] (LTD Plan at 1159). LINA's own claims manual, known internally as the "Book of Knowledge," similarly provides that a "claim should be escalated to the LTD Case Manager when it becomes clear that a return to work may not or will not occur prior to the STD Termination Date." (Reply Affirm. Ex. G ("Book of Knowledge") at 1020). Additionally, the LTD Plan states under the heading "Filing a Claim" that LINA and another carrier, Unum Provident ("Unum"), will "send [an employee] any notice of claim forms to begin processing [his or her] LTD claim." (LTD Plan at 1159). According to LINA, to file a claim for LTD benefits successfully, an employee "must submit a long term disability claim form with proof of loss to LINA." (Lodi Aff. ¶ 9).

The LTD Plan's definition of "disability" differs from that of the STD Plan. Under the LTD Plan, an employee is considered "disabled" if "because of injury or sickness, [the employee is] unable to perform all the material duties of [his or her] regular occupation or, solely due to injury or sickness, [the employee is] unable to earn more than 80% of [his or her] indexed covered earnings." (LTD Plan at 1151). Employees must be disabled within the meaning of the LTD Plan for 180 days before they may begin receiving LTD benefits. (Id. at 1152). The period between the determination of disability and the receipt of benefits is known as the "benefit waiting period." (Id.).

In addition to her LINA LTD group coverage, Taaffe had an individual LTD policy issued by Unum. (Lodi Aff. ¶ 10).

---

1. Citations to the STD Plan and LTD Plan refer to LINA's Bates numbers.

2. Although the LTD Plan refers to CIGNA as the benefits provider, LINA is an affiliate of CIGNA, see Torres v. Pittston Co., 346 F.3d 1324, 1325 (11th Cir.2003), and the parties appear to agree that LINA is the proper defendant in this case.

The Unum policy was intended to cover salary amounts above the maximum covered under the LTD Plan. (*Id.*). LINA contends that claims "made under this policy are administered and paid by Unum" with no input from LINA. (*Id.*). LINA also alleges that its "standard procedure" is to approve a UBS employee's claim for LTD benefits under the LTD Plan when it receives notification that Unum has approved such a claim under its LTD policy. (*Id.* ¶ 13).

### B. *Procedural History*

On February 27, 2008, Taaffe stopped working at UBS due to severe pain in her neck and shoulder. (Affirm. of Scott M. Riemer, Esq., dated May 28, 2010 (ECF No. 19) ("Riemer Affirm."), Ex. A at 33, 60). On or about March 17, 2008, she submitted a claim to LINA for STD benefits. (Compl. ¶ 10). LINA denied that claim on June 6, 2008. (Riemer Affirm. Ex. A at 271–73).

By letter dated November 11, 2008, Taaffe sought certain documents and informed LINA that she intended to appeal its decision. (Reply Affirm. Ex. I at 878). Although Taaffe had not filed a formal claim for LTD benefits, her letter stated that she planned to appeal LINA's "June 6, 2008 denial of *long term* disability benefits." (*Id.*) (emphasis added). In her appeal letter dated March 3, 2009, however, Taaffe appealed from LINA's "June 6, 2008 denial of short and long term disability benefits." (*Id.* at 723). In response, by letter dated May 1, 2009, LINA affirmed its previous denial of STD benefits, but failed to address the topic of LTD benefits. (Riemer Affirm. Ex. A at 256–58).

Taaffe then commenced this suit on July 29, 2009. In her complaint, Taaffe demanded "the amount of all long term disability benefits due under the terms of the [LTD] Plan that have not been paid, together with the interest thereon," as well as attorneys' fees and costs. (Compl. at 5).

After the filing of her suit, Taaffe submitted a claim to Unum for LTD benefits. (Lodi Aff. ¶ 11). On March 24, 2010, Unum approved that claim and also notified LINA of its decision. (*Id.* ¶¶ 11–12). That same day, purportedly following its "standard procedure" upon receiving notification of Unum's approval of a claim for LTD benefits, LINA sent Taaffe's counsel a letter stating that her "claim for long term disability benefits has been approved." (Affirm. of Emily Hayes, Esq., in Opp'n to Mot. for Prejudgment Interest, Attorney's Fees and Costs, dated June 14, 2010 (ECF No. 21), Ex. 3 ("Mar. 24 Letter") at 1); Lodi Aff. ¶ 13 ("LINA's standard procedure upon receiving such a notification from Unum is to also approve long term disability benefits under the LINA policy."). Insofar as relevant, the letter stated: "[Taaffe's] date of disability is February 27, 2008. Benefits commence on August 27, 2008 following a benefit waiting period of 26 weeks." (Mar. 24 Letter at 1). On April 20, 2010, LINA paid Taaffe $165,000 in benefits for the period from August 27, 2008, to April 26, 2010. (Lodi Aff. ¶ 16).

This case initially was referred to me for settlement purposes. (ECF No. 8). There was no need for a settlement conference, however, after LINA awarded Taaffe the LTD benefits sought in her complaint. Nevertheless, as of April 2010, Taaffe's demands for prejudgment interest, as well as attorneys' fees and costs, remained unresolved.

On April 16, 2010, the parties consented to my exercise of jurisdiction over this case for all purposes pursuant to 28 U.S.C. § 636(c). Thereafter, on May 28, 2010, Taaffe filed a motion seeking prejudgment interest in the amount of $12,205.48, attorneys' fees in the amount of $51,510.80, and

$511.70 in costs. (ECF No. 17). LINA filed its opposition papers on June 14, 2010, (ECF Nos. 20–22), to which Taaffe replied one week later, (ECF Nos. 23–24). In her reply papers, Taaffe demanded an additional $11,202 in attorneys' fees as compensation for the work her counsel performed in responding to LINA, bringing the total fees demand to $62,712.80. (Reply Mem. (ECF No. 23) at 1).

## II. *Discussion*

### A. *Prejudgment Interest*

Taaffe claims that she is entitled to prejudgment interest on the $165,000 LTD benefits award because interest is "an element of [her] complete compensation" and is necessary "to ensure that LINA does not profit from its wrongful denial of [her] claim." (Pl.'s Mem. of L. (ECF No. 18) ("Pl.'s Mem.") at 4) (internal quotation marks omitted).

In response, LINA contends that the Court should deny Taaffe prejudgment interest because such interest is available only in "successful" ERISA cases, *i.e.,* those cases in which the plaintiff obtains relief for a reason related to the litigation. (Def.'s Mem. of L. (ECF No. 22) ("Def.'s Mem.") at 6). LINA also argues that because Taaffe never filed a formal claim for LTD benefits, it never denied such a claim, and there consequently was no delay in the payment of benefits. (*Id.*). Finally, should prejudgment interest be awarded, LINA urges the Court to use the "Treasury" rather than the New York statutory rate in order "to prevent the use of interest as a tool to impose a penalty." (*Id.* at 8).

### 1. *Entitlement to Prejudgment Interest*

■ "The decision whether to grant prejudgment interest, and the rate used if such interest is granted, are matters confided to the district court's broad discretion." *SEC v. First Jersey Sec., Inc.,* 101 F.3d 1450, 1476 (2d Cir.1996). "[T]he fac-

tors that the district court is to consider in determining whether to award prejudgment interest are '(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court.'" *Slupinski v. First Unum Life Ins. Co.,* 554 F.3d 38, 55 (2d Cir.2009) (quoting *Jones v. UNUM Life Ins. Co. of Am.,* 223 F.3d 130, 139 (2d Cir.2000)). A court also must bear in mind that "[t]he essential rationale for awarding prejudgment interest is to ensure that an injured party is fully compensated for its loss." *City of Milwaukee v. Cement Div., Nat'l Gypsum Co.,* 515 U.S. 189, 195, 115 S.Ct. 2091, 132 L.Ed.2d 148 (1995). Prejudgment interest also may be awarded "to ensure that the defendant not enjoy a windfall as a result of its wrongdoing." *Slupinski,* 554 F.3d at 54 (citing *Donovan v. Sovereign Sec., Ltd.,* 726 F.2d 55, 58 (2d Cir.1984) ("Failure to award interest would create an incentive to violate [federal law], because violators in effect would enjoy an interest-free loan for as long as they could delay paying out . . . .")). "[I]n employment-related cases," the Second Circuit has "consistently stated that '[t]o the extent . . . that the damages awarded to the plaintiff represent compensation for lost wages, it is ordinarily an abuse of discretion *not* to include pre-judgment interest.'" *Sharkey v. Lasmo (AUL Ltd.),* 214 F.3d 371, 375 (2d Cir.2000) (quoting *Gierlinger v. Gleason,* 160 F.3d 858, 873 (2d Cir.1998) (emphasis in *Gierlinger*)).

In *Slupinski,* the plaintiff sought prejudgment interest on an award of LTD benefits under ERISA. 554 F.3d at 39. The Second Circuit began its analysis by noting that the benefits plan was "designed to alleviate a disabled employee's loss of income." *Id.* at 55. The court

further observed that, "[g]iven the district court's finding that [plaintiff] was unable to work, he should have been receiving disability benefits throughout the period of his inability to earn his income." *Id.* For this reason, the court concluded that "[i]n light of ERISA's purpose of protecting employees' rights to receive the benefits they are due, both the first and third [*Jones* ] factors, *i.e.*, the need to fully compensate the wronged party for actual damages suffered and the remedial purpose of ERISA, plainly favored [the plaintiff]." *Id.*

■ Here, too, UBS's LTD Plan is meant to serve as a substitute for the income an employee loses due to disability. An award of LTD benefits therefore "represent[s] compensation for lost wages," meaning that in most cases it would be an "abuse of discretion *not* to include prejudgment interest" on such an award. *Gierlinger,* 160 F.3d at 873 (emphasis in original). Additionally, although a court never formally decided that Taaffe was "disabled" within the meaning of the Plan (and therefore entitled to LTD benefits), LINA admitted that Taaffe was disabled as of February 27, 2008, and should have begun receiving LTD benefits on August 27, 2008. (*See* Mar. 24 Letter at 1 ("[Taaffe's] date of disability is February 27, 2008. Benefits commence on August 27, 2008 following a benefit waiting period of 26 weeks.")). Accordingly, LINA acknowledged that Taaffe "should have been receiving disability benefits throughout the period of [her] inability to earn her income." *Slupinski,* 554 F.3d at 55. Consequently, as in *Slupinski,* the first and third factors in the prejudgment interest analysis "plainly favor" Taaffe. *Id.*

■ Turning to the second *Jones* factor, Taaffe has done nothing which suggests that an award of prejudgment interest would be unfair or inequitable. Although LINA makes much of the fact that Taaffe

never filed a formal claim for LTD benefits and, therefore, supposedly never endured any delay in the payment of her benefits, (*see, e.g.,* Def.'s Mem. at 6–7), both the LTD Plan and LINA's own "Book of Knowledge" make clear that it is *LINA's* responsibility to initiate the LTD benefits application process. Specifically, the Plan states under the heading "Filing a Claim" that UBS's insurance providers will provide a claimant with "any notice of claim forms to begin processing [the claimant's] LTD claim." (LTD Plan at 1159). In addition, the "Book of Knowledge" notes that "[s]ince we have notification of loss when we receive the STD claim, we are also responsible for beginning the investigation on that claim in a timely manner." (Book of Knowledge at 1020). The Book of Knowledge further provides that a claim for STD benefits "should be escalated to the LTD Case Manager when it becomes clear that a return to work may not or will not occur prior to the STD Termination Date (Benefit Start Date for LTD)." (*Id.*).

LINA does not allege that it ever began the process of transitioning Taaffe's STD claim to an LTD claim or that it sent her any notice of claim forms, even though it undoubtedly was aware that she was seeking review of the denial of *LTD* benefits. (*See* Reply Affirm. Ex. I at 723, 878). LINA thus cannot object to an award of prejudgment interest on the ground that Taaffe never submitted a formal claim for LTD benefits since it neither transitioned her STD claim to an LTD claim, nor provided her with the requisite application forms for LTD benefits, as the LTD Plan and Book of Knowledge obligated it to do.

LINA's contention that Taaffe is not entitled to prejudgment interest because her ERISA lawsuit was not "successful" is equally misplaced. In essence, LINA claims that Taaffe was not successful because its decision to award her LTD bene-

fits "was an automatic event following approval by Unum and was unrelated to this lawsuit, and therefore did not involve any sort of capitulation by LINA." (*See* Def.'s Mem. at 15). Stated somewhat differently, LINA contends that its "ultimate payment of long term disability benefits beginning in March 2010 was not a reversal of an earlier denial." (*Id.* at 14). LINA cannot deny, however, that it twice concluded that Taaffe was not "disabled," but later admitted in March 2010 that Taaffe's "date of disability [was] February 27, 2008." (Riemer Aff. Ex. A at 256–58, 271–73; Mar. 24 Letter at 1). Nor can LINA deny that the definitions of "disabled" under the STD and LTD Plans are substantially similar. (*Compare* STD Plan at 1142 *with* LTD Plan at 1151). Thus, it is unclear how LINA's March 24, 2010 letter could have been anything other than "a reversal of an earlier denial."

In sum, Taaffe should have received LTD benefits between August 27, 2008, and April 20, 2010. Merely awarding her the benefits that she was owed during that period, however, will not compensate her fully for her loss. Accordingly, she is entitled to interest on these payments as "an element of [her] complete compensation." *Jones*, 223 F.3d at 139.

2. *Prejudgment Interest Calculation*

■ Having found that an award of prejudgment interest is appropriate, the remaining issue is how much interest is needed to make Taaffe whole. Answering this question requires the Court to (a) select an appropriate interest rate, and (b) use that rate to calculate the amount of interest owed. In making these determinations, the Court must be mindful that "[a]wards of prejudgment interest must not result in over-compensation of the plaintiff." *Wickham Contracting v. Local Union No. 3. IBEW*, 955 F.2d 831, 834 (2d Cir.1992).

■ Choosing an interest rate, as noted above, is a matter "confided to the district court's broad discretion." *First Jersey*, 101 F.3d at 1476. Taaffe proposes that the Court use a rate of nine percent per annum, which is the prejudgment interest rate in New York State. *See* N.Y. C.P.L.R. § 5004. LINA, on the other hand, asks the Court to select the Treasury rate, pursuant to 28 U.S.C. § 1961.

■ An interest rate of nine percent is appropriate in this case. Although a number of courts in this District have used the Treasury rate to calculate prejudgment interest, *see, e.g., Rasile v. Liberty Life Assur. Co. of Boston*, No. 03 Civ. 4316(NRB), 2004 WL 1444886, at *1 (S.D.N.Y. June 28, 2004), I find Judge Lynch's reasoning in *Alfano v. CIGNA Life Insurance Company of New York* to be persuasive:

> [W]hile there is no applicable federal statute establishing a prejudgment interest rate, New York has adopted a statutory prejudgment interest rate of 9%, thus making an objective legislative judgment that 9% is an appropriate rate. Although [defendant] argues that the Treasury rate constitutes a more appropriate rate, there is no reason to think that that rate more accurately captures the time value of money in New York, or the true loss to plaintiff, particularly given the New York State Legislature's determination otherwise.

No. 07 Civ. 9661(GEL), 2009 WL 890626, at *7 (S.D.N.Y. Apr. 2, 2009) (internal citations omitted).

■ Turning to the calculation of the interest owed, as Judge Gorenstein recently observed, in ERISA cases courts "routinely calculate prejudgment interest from a midpoint date in the delinquency period." *Alston v. Northstar La Guardia LLC*, No. 10 Civ. 3611(LAK)(GWG), 2010 WL 3432307, at *3 (S.D.N.Y. Sept. 3, 2010) (citing *Finkel v. Triple A Grp. Inc.*, 708 F.Supp.2d 277, 287–88 (E.D.N.Y.2010);

*Trs. of the Plumbers Local Union No. 1 Welfare Fund v. Manhattan Plumbing Corp.,* No. 08 Civ. 3036(FB) (RML), 2009 WL 5821676, at *5 n. 4 (E.D.N.Y. Oct. 8, 2009)). In this case, LINA's "delinquency period" extended from August 27, 2008 (the date Taaffe became eligible to receive LTD benefits) until April 20, 2010 (the date LINA paid Taaffe). The midpoint date of this 602–day period is June 23, 2009. Multiplying the amount LINA owed ($165,000) by the annual interest rate of nine percent, and dividing that amount ($14,850) by 365, the daily rate is $40.68. Accordingly, Taaffe is owed $12,244.68 ($40.68 × 301).[3]

**B.** *Attorneys' Fees*

 Taaffe also seeks to recover attorneys' fees in the amount of $62,712.80 pursuant to 29 U.S.C. § 1132(g)(1) ("Section 1132(g)(1)"), which affords district courts discretion to award either party "a reasonable attorney's fee" in an ERISA case. The Court therefore must determine (a) whether Taaffe is entitled to recover attorneys' fees and, if so, (b) whether the hourly rate for the timekeepers involved and the number of hours they expended were reasonable. *See Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.,* 246 F.3d 142, 146 n. 3 (2d Cir.2001); *Kerin v. U.S. Postal Serv.,* 218 F.3d 185, 190 (2d Cir.2000).

**1.** *Entitlement to Fees*

**a.** *Chambless and Hardt*

Until the Supreme Court's recent decision in *Hardt v. Reliance Standard Life Insurance Company,* 560 U.S. ——, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010), courts

in this Circuit were required to apply a five-factor test to determine whether to award attorneys' fees in ERISA cases, examining:

> (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants.

*Chambless v. Masters, Mates & Pilots Pension Plan,* 815 F.2d 869, 871 (2d Cir. 1987). Although a court had to consider all five factors, it was not necessary for a party to prevail on each in order to receive an attorneys' fees award. *See Lampert v. Metro. Life Ins. Co.,* No. 03 Civ. 5655(GEL), 2004 WL 1395040, at *1 (S.D.N.Y. June 21, 2004). Nevertheless, it was an abuse of discretion to deny attorneys' fees when a party established all five factors. *See Chambless,* 815 F.2d at 871. It was also well settled in this Circuit that courts typically awarded attorneys' fees to a "prevailing party under ERISA in the absence of some particular justification for not doing so." *See Birmingham v. So-Gen–Swiss Int'l Corp. Ret. Plan,* 718 F.2d 515, 523 (2d Cir.1983).

 In *Hardt,* the Supreme Court held that the five *Chambless* factors "bear no obvious relation to [Section] 1132(g)(1)'s text or to [the Court's] fee-shifting jurisprudence, [and therefore] *are not required* for channeling a court's discretion when awarding fees." [4] 130 S.Ct. at 2158 (em-

---

**3.** Although Taaffe calculated the interest owed using the same method, she found that "[b]enefits were owed for 600 days" and thus arrived at a figure of $12,205.48. (*See* Pl.'s Mem. at 6 n. 1). By the Court's calculation, however, 602 days separate August 27, 2008, and April 20, 2010.

**4.** Although *Hardt* involved an appeal from the United States Court of Appeals for the Fourth Circuit, the Fourth Circuit analyzed factors nearly identical to those discussed in *Chambless. See Quesinberry v. Life Ins. Co. of N. Am.,* 987 F.2d 1017, 1029 (4th Cir.1993).

phasis added). The Court did note, however, that "a court *may* consider the five factors ... in deciding whether to award attorney's fees." *Id.* at 2158 n. 8 (emphasis added).

■ Moreover, *Hardt* established that a fee claimant need not demonstrate that it is the "prevailing party" to be eligible for an award. Rather, the claimant need only show that it has achieved "some success on the merits." *Id.* at 2156, 2159. The Court observed that a

> "claimant does not satisfy that requirement by achieving 'trivial success on the merits' or a 'purely procedural victor[y],' but does satisfy it if the court can fairly call the outcome of the litigation some success on the merits without conducting a 'lengthy inquir[y] into the question whether a particular party's success was 'substantial' or occurred on a 'central issue.' "

*Id.* at 2158 (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 688 n. 9, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983)) (alterations in *Hardt*).

LINA does not dispute that Taaffe achieved "some success" in this case; nor could it, since Taaffe secured the payment of retroactive LTD benefits and a commitment from LINA to pay such benefits in the future, both of which she had demanded in her complaint. (*See* Compl. at 5; Mar. 24 Letter at 1). LINA nevertheless contends that Taaffe's success was not "on the merits." According to LINA, its decision to approve Taaffe's LTD benefits followed "automatically" from Unum's grant of LTD benefits, and, therefore, "was completely unrelated to this litigation, and would have occurred whether this litigation existed or not." (Def.'s Mem. at 10).

Taaffe counters that the Court should not speculate with respect to LINA's motive in approving her claim for LTD benefits, as the "fact remains that Taaffe asserted a legal claim for LTD benefits and

LINA (for whatever reason) paid Taaffe exactly the benefits she sued for." (Pl.'s Reply Mem. at 9).

The Court therefore must determine what it means to succeed "on the merits."

### b. *Success on the Merits*

■ According to Taaffe, a party succeeds "on the merits" when it achieves the relief it sought with respect to a particular substantive claim, regardless of the means by which it achieves that result. (*See id.*). *Hackett v. Std. Ins. Co.*, 2010 WL 5068098 at *3–4 (D.S.D. Dec. 7, 2010), supports that position. In that case, as here, the plaintiff sought attorneys' fees after the defendant insurer stipulated to the payment of the LTD benefits for which plaintiff initially had brought suit. *Id.* at *1. Although the defendant "claim[ed] plaintiff did not achieve any degree of success on the merits of her case," the court reached the opposite conclusion, finding that the plaintiff had achieved "a complete victory—the very prayer for relief which she sought by her original complaint." *Id.* at *4. The court noted that the plaintiff's "complaint sought recovery of benefits due under the terms of the plan, to enforce her rights under the terms of the plan, and to clarify her rights to future benefits under the terms of the plan.... That is what this court's order, by stipulation of the parties, granted." *Id.* (internal quotation marks and citation omitted). Thus, rather than delving into the reasons why the insurer decided to stipulate to the payment of LTD benefits, the court in *Hackett* found that the plaintiff had succeeded "on the merits" solely by securing the relief she originally sought in her complaint.

In Taaffe's view, a "purely procedural" victory would involve success on a *procedural* as opposed to a *substantive* issue. For example, winning a motion for class certification, *see McQueary v. Conway*, 614 F.3d 591, 601 (6th Cir.2010), or a motion to

intervene, see *U.S. v. Hooker Chemicals & Plastics Corporation,* 591 F.Supp. 966, 968 (W.D.N.Y.1984), would constitute a "purely procedural" victory because such a success does not bring the victorious party any closer to its desired relief. As the Seventh Circuit noted in *Richardson v. Penfold,* 900 F.2d 116, 119 (7th Cir.1990), a "procedural victory that may be a way station to utter substantive defeat creates no right to fees."

For its part, LINA contends that the distinction between "success on the merits" and "purely procedural victories" lies in the means by which a party achieves a particular result. For example, in *Humane Society of the United States v. HVFG, LLC,* No. 06 Civ. 6829(HB), 2010 WL 3322512, at *1–4 (S.D.N.Y. Aug. 19, 2010), the plaintiff alleged that the defendant had violated the Clean Water Act ("CWA"). After both parties moved for summary judgment, the court granted in part and denied in part both motions, leading both parties to claim that they were entitled to attorneys' fees and costs. *Id.* at *2–3. The court nevertheless denied the defendant's application for fees, reasoning that the defendant "was granted partial summary judgment because certain claims were deemed moot, which is not equivalent to 'relief on the merits,' such as a determination that there was no CWA violation." *Id.* at *4. The court found that the defendant's victory fell into the "purely procedural" category because the court's decision had nothing to do with the merits of the plaintiffs allegations. *Id.* (citing *Ruckelshaus,* 463 U.S. at 688 n. 9, 103 S.Ct. 3274); *see also Reimann v. Prudential Ins. Co. of Am.,* 2010 WL 4116743, at *2 (E.D.Wisc. Oct. 19, 2010) (plaintiff who sued for reinstatement of benefits was denied attorneys' fees even though defendant reinstated benefits because the "court was never even given the opportunity to make a finding that ERISA's procedure was violated.").

In sum, according to LINA, to be eligible for attorneys' fees, it is not enough that a party obtain the relief it sought in the litigation; instead, the party must secure that relief, at least in part, for the reasons it claims it is entitled to it.

 Taaffe's interpretation of "success on the merits" is the more reasonable view. At the outset, as the Second Circuit has observed, "ERISA's attorney's fee provisions must be liberally construed to protect the statutory purpose of vindicating retirement rights." *Locher v. UNUM Life Ins. Co. of Am.,* 389 F.3d 288, 298 (2d Cir.2004) (quotation marks omitted). Here, Taaffe's is the more liberal construction. Moreover, LINA's approach would allow insurers to circumvent too easily ERISA's "statutory purpose of vindicating retirement rights." Under LINA's definition of "success on the merits," any insurer who settled an ERISA claim could avoid paying attorneys' fees simply by citing a reason unrelated to the litigation why it allegedly had settled. This approach would seem to open the door to abuse.

 Furthermore, as Taaffe correctly notes, prior to *Hardt* several courts in this Circuit had concluded that a settling party in an ERISA action could be a "prevailing party" entitled to attorneys' fees, irrespective of the reason that the case settled. *See Juliano v. H.M.O. of N.J.,* 93 Civ. 8960(KMW), 2001 U.S. Dist. LEXIS 17140, at *1–4 (S.D.N.Y. Sept. 24, 2001); *Apple v. Apple,* 66 F.Supp.2d 465, 471 (W.D.N.Y. 1999); *Noe v. UNUM Life Ins. Co. of N. Am.,* No. 96 Civ. 0177(JSM), 1998 WL 80199, at *4 (S.D.N.Y. Feb. 24, 1998). In *Noe,* for example, Judge Martin ordered an award of attorneys' fees under ERISA, citing *Maher v. Gagne,* 448 U.S. 122, 126 n. 8 129, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980), in which the Supreme Court had held that "[t]he fact that [a party] prevailed through a settlement rather than

through litigation does not weaken her claim to fees" despite the language from a consent decree "that '[n]othing [therein] is intended to constitute an admission of fault by either party to this action.'" *Noe,* 1998 WL 80199, at *4. The correctness of that ruling is, if anything, underscored by *Hardt,* which clearly sought to expand the class of claimants to whom fees were available beyond merely "prevailing parties."

■ In sum, the Court finds that Taaffe has achieved more than "some success on the merits" because LINA has provided her with everything she demanded in her complaint. As the Supreme Court made clear in *Hardt,* that is all a fee claimant must show to be eligible to collect attorneys' fees. 130 S.Ct. at 2158. Accordingly, the Court need not address the five *Chambless* factors.

### 2. *Reasonableness of Requested Fees*

Having concluded that Taaffe is entitled to attorneys' fees under Section 1132(g)(1), I turn to the reasonableness of the hourly rate for the timekeepers involved and the number of hours they expended. *See Crescent,* 246 F.3d at 146 n. 3; *Kerin,* 218 F.3d at 190.

#### a. *Reasonable Hourly Rate*

■ A fee applicant bears the burden of "produc[ing] satisfactory evidence" that requested rates are "in line with those prevailing in the community." *Pearson Educ., Inc. v. Vergara,* No. 09 Civ. 6832(JGK)(KNF), 2010 WL 3744033, at *6 (S.D.N.Y. Sept. 27, 2010). In assessing the reasonableness of the hourly rates charged by Taaffe's counsel, the Court may consider the prevailing market rates "for similar services by lawyers of reasonably comparable skill, experience and reputation." *Gierlinger,* 160 F.3d at 882 (quoting *Blum v. Stenson,* 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)). Additionally, the Court may rely on its own knowledge of private firm hour-

ly rates. *Miele v. N.Y. State Teamsters Conference Pension & Ret. Fund,* 831 F.2d 407, 409 (2d Cir.1987). The Court also may factor into its determination "the difficulty of the questions involved[,] the skill required to handle the problem[,] the time and labor required[,] the lawyer's experience, ability and reputation[,] the customary fee charged by the Bar for similar services[,] and the amount involved." *F.H. Krear & Co. v. Nineteen Named Trs.,* 810 F.2d 1250, 1263 (2d Cir.1987) (quoting *In re Schaich,* 55 A.D.2d 914, 391 N.Y.S.2d 135, 136 (2d Dep't 1977)). In exercising its "considerable discretion" as to attorneys' reasonable hourly billing rates, a court should determine the rates that a "paying client would be willing to pay," "bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany,* 522 F.3d 182, 190 (2d Cir.2008).

In this action, Taaffe is represented by Riemer & Associates LLC ("Riemer"), a New York law firm specializing in disability insurance law. (*See* Riemer & Associates LLC, http://www.riemerlawfirm.com (last visited Feb. 23, 2011)). There are six timekeepers for whom Taaffe seeks to recover fees: a partner, two former associates, and three paralegals.

The most highly compensated attorney for whom Taaffe seeks to recover attorneys' fees is Scott M. Riemer, the firm's name partner. Mr. Riemer is a 1983 graduate of the University of Michigan Law School who has focused his practice on ERISA litigation since 1994. (Riemer Affirm. ¶¶ 4–5). Mr. Riemer has written numerous articles concerning various aspects of ERISA, and has also been selected as a New York "Super Lawyer" in the area of employee benefits law for the last four years. (*Id.* ¶¶ 9, 11). Taaffe seeks to be

reimbursed for Mr. Riemer's time at the rate of $560 per hour, which is the rate that he has charged more than 150 hourly-fee clients since 2009. (*Id.* ¶ 28).

The two associates who worked on this case are Joseph Anci and Dean Solomon, both of whom have at least five years' litigation experience. (*Id.* ¶¶ 15–22). Mr. Anci was an associate at Riemer between February and December 2009, and is now the head of the civil litigation practice at LaSasso Griesmeyer Law Group PLLC. (*Id.* ¶ 16; *see* http://www.lglawgroup.com/senior_attorneys) (last visited Feb. 23, 2011). Mr. Solomon was a contract attorney at Riemer from April through May 2010. (Riemer Affirm. ¶ 20). Taaffe seeks to be reimbursed at the rate of $340 per hour for their time. (*Id.* ¶ 28).

Taaffe also requests reimbursement for the time of three paralegals: Ellen Mayer, Audrey Beerman, and Kasandra Gonzalez. (*Id.* ¶¶ 23–25). Ms. Meyer is the most senior of the three, having spent thirteen years as a paralegal and more than twenty-five years in the employee benefits field. (*Id.* ¶ 23). Both Ms. Beerman and Ms. Gonzalez have been paralegals for approximately three years. (*Id.* ¶¶ 24, 26). Taaffe requests a rate of $ 180 per hour for their time. (*Id.* ¶ 28).

■ Considering the claims involved in this case, the attorneys' and paralegals' experience, and prevailing rates in the field of employee benefits law, I find that the hourly billing rates of the attorneys and paralegals at Riemer for this matter are reasonable. With respect to Mr. Riemer, the fact that over 150 clients have paid him at a rate of $560 since 2009 is a "strong indication of what private parties believe is the 'reasonable' fee to be awarded." *Crescent,* 246 F.3d at 151. Additionally, three experienced ERISA practitioners from this District have submitted sworn statements attesting to the reasonableness of the rate requested for Mr.

Riemer's time. (*See* Riemer Affirm. Ex. C); *see also Barnes v. Am. Int'l Life Assur. Co. of N.Y.,* No. 08 Civ. 06222(DC), 2010 WL 1253742, at *3 (S.D.N.Y. Mar. 16, 2010) (relying on sworn statements of other practitioners). Moreover, a number of courts in the New York City area have found the same or similar rates to be reasonable. *See Zoller v. INA Life Ins. Co. of New York,* No. 06 Civ. 0112(RJS), ECF Nos. 86, 90, 99, 100, 2008 WL 3927462 (S.D.N.Y. Aug. 25, 2008) (awarding Mr. Riemer's client a total of $180,466.60 in attorneys' fees based on rates of $560 for Mr. Riemer, $340 for an associate, and $180 per hour for Ms. Meyer and Ms. Beerman); *Barnes,* 2010 WL 1253742, at *3 (hourly rate of $495 reasonable for experienced ERISA litigator); *Clark v. First Unum Life Ins. Co.,* No. 04 Civ. 9050(LTS)(DFE), 2009 WL 1150318, at *4 (S.D.N.Y. Apr. 29, 2009) ($480 hourly rate reasonable for Mr. Riemer).

As for the rates of the two associates and three paralegals, LINA does not argue that these rates are unreasonable. Accordingly, I find that these rates are reasonable. *See Zoller,* 06 Civ. 0112, ECF Nos. 86, 90, 99, 100 (awarding the same rates as requested here); *Clark,* 2009 WL 1150318, at *4 (upholding $300 and $150 hourly rates for Riemer associates and paralegals, respectively).

b. *Hours Reasonably Expended*

■ To enable a court to determine the reasonableness of the hours expended, a party seeking an award of attorneys' fees must submit contemporaneous time records indicating the number of hours expended and the nature of the work done. *See Lewis v. Coughlin,* 801 F.2d 570, 577 (2d Cir.1986); *N.Y. State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1148 (2d Cir.1983); *Puglisi v. Underhill Park Taxpayer Ass'n,* 964 F.Supp. 811, 817 (S.D.N.Y.1997). Taaffe has complied

with this requirement. (*See* Riemer Affirm. Ex. E).

Taaffe seeks reimbursement for a total of 164.585 hours of work by the attorneys and paralegals at Riemer. (*See id.* 134, Ex. E; Reply Affirm. ¶ 7, Ex. J). Although Riemer's records indicate that the firm actually expended 185.2 hours on this case, Taaffe has reduced the amount of hours by approximately ten percent "to account for any alleged inefficiency or redundancy."[5] (Pl.'s Mem. at 1). LINA contends that, despite the ten percent reduction, 164.585 hours is excessive. Specifically, LINA takes issue with the 48.02 hours Riemer allegedly spent preparing the motion for attorneys' fees and the 68.09 hours the firm claims to have expended in discovery. (Def.'s Mem. at 21). LINA also points out that several of Riemer's time entries refer to the preparation of discovery materials *prior* to the filing of the complaint. (*Id.*).

■ Having reviewed the time records, I find that the number of hours expended on this case, even when reduced by ten percent, was excessive in certain respects. For example, Riemer attorneys and paralegals spent a *reduced* total of 71.62 hours preparing the memoranda of law in support of the motion for prejudgment interest, attorneys' fees, and costs and the reply to LINA's opposition papers. (*See* Riemer Affirm. ¶ 34; Reply Affirm. ¶ 7). However, Riemer's memoranda of law in this case largely mirror the memoranda it submitted in *Zoller*, at least with respect to the application for attorneys' fees. (*Compare* Pl.'s Mem. at 6–23 with *Zoller*, No. 06 Civ. 0112, ECF No. 84). Moreover, as the court noted in *Clark*, the "briefs

largely consist of recitations of the basic facts and procedural history of the case and argumentation based on well-established law." 2009 WL 1150318, at *4 (awarding attorneys' fees for 16.55 hours of work expended in motion practice, though Riemer allegedly spent 65.45 hours). Additionally, with respect to discovery, Riemer spent 11.7 hours in July 2009 drafting and editing document requests, initial disclosures, interrogatories, and a settlement demand, only to expend an additional 14.3 hours editing those materials in November 2009. (Riemer Aff. Ex. E).

In light of these billing concerns, it is appropriate to decrease all of Riemer's already reduced time charges by an additional fifteen percent. *See In re "Agent Orange" Product Liab. Litig.*, 818 F.2d 226, 237 (2d Cir.1987) ("an across-the-board percentage cut[ ] in hours [is] a practical means of trimming fat from a fee application"); *Days Inn Worldwide, Inc. v. Amar Hotels, Inc.*, No. 05 Civ. 10100(KMW)(KNF), 2008 WL 2485407, at *10 (S.D.N.Y. June 18, 2008) (reducing attorneys' fee by seventy-five percent when "a substantial amount of work performed … was redundant and unnecessarily duplicative"). After making that adjustment, Taaffe is entitled to a total of $53,305.88 as her reasonable attorneys' fees in this case.

## C. Costs

■ In addition to prejudgment interest and attorneys' fees, Taaffe seeks reimbursement of costs and disbursements in the amount of $511.70. (Riemer Affirm. ¶ 35). These expenditures relate to such

---

5. As of May 28, 2010, the date when Taaffe moved for attorneys' fees and costs, Riemer had spent 156.65 hours on this case. (*See* Riemer Aff. ¶ 34). Reduced by ten percent, the figure becomes 140.985 hours. On June 21, 2010, Taaffe requested reimbursement for an additional 23.6 hours. (*See* Reply Affirm. ¶ 7). Riemer's records, however, indicate that the firm actually spent 28.55 hours on the case from June 1, 2010, to June 21, 2010. (*See id.* Ex. J).

tasks as filing, service of process, and copying. (*See id.* Ex. F). I find these expenses to be reasonable. *See Finkel.* 708 F.Supp.2d at 290–91 (awarding $818.53 in costs for filing, service, postage, and photocopying).

### III. *Conclusion*

For the forgoing reasons, Taaffe's motion for prejudgment interest, attorney's fees, and costs is granted. Taaffe shall be awarded prejudgment interest in the amount of $12,244.68, and judgment shall be entered for Taaffe in the amount of $53,305.88 for attorneys' fees and $511.70 for costs, for a total of $66,062.26.